**In re the COMMITMENT OF Christopher SHAW.**

**No. 09–02–530 CV.**

Court of Appeals of Texas, Beaumont.

Submitted June 19, 2003.

Decided Sept. 25, 2003.

Ken Balusek, State Counsel for Offenders, Huntsville, for appellant.

Autumn Lewis, Special Prosecution Unit, Civil Division, Huntsville, for appellee.

Before STEVE McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

The State of Texas filed a petition to civilly commit Christopher Shaw as a sexually violent predator (SVP). *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.001–841.147 (Vernon 2003).[1] A jury found that Shaw suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. The trial court entered a final judgment and order of civil commitment from which Shaw appeals. Shaw raises five issues.

■ In his first issue, Shaw contends the Texas SVP statutory scheme is unconstitutional because it is punitive in nature and violates basic constitutional safeguards. Shaw relies on the factors set out in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). We have considered and rejected similar complaints before. *See Beasley v. Molett*, 95 S.W.3d 590, 607–08 (Tex.App.-Beaumont 2002, pet. filed); *In re the Com-*

*mitment of Mullens*, 92 S.W.3d 881, 883–84 (Tex.App.-Beaumont 2002, pet. filed).

■ In *Beasley*, the appellant maintained Chapter 841 is punitive because a violation of the terms of commitment is a third degree felony and a predator ... who is unable to control his behavior, is condemned to failure. *See* § 841.085; *Beasley*, 95 S.W.3d at 608. We rejected this argument. *Id.* "[R]ather than promoting permanent incarceration of sex offenders, the Act on its face maintains the offenders in the community while imposing on the persons certain requirements to minimize—for the benefit of both the offenders and the public—the opportunity for the offenders to commit new offenses after commitment." *Id.* Society, through its elected representatives in the Legislature, may impose restrictions on a civilly committed person's conduct and provide for enforcement of the commitment order, without the civil commitment itself being considered punitive in nature.

■ Similarly, the appellant in *Mullens* argued the Act was unconstitutional because section 841.085 serves a punitive function. *Mullens*, 92 S.W.3d at 884. We said in *Mullens* that section 841.085 "serves the goals of protection of society from future dangerous behavior and of supervision of persons being treated on an outpatient basis. The possible criminal penalty which may be imposed for a violation of a judge's order does not render the entire Act punitive in nature." *Id.* at 884. We concluded then, as we do now, that the Legislature can use the possibility of criminal sanctions to enforce the trial court's commitment order without making the purpose of civil commitment punitive. The appellant in *Mullens* also argued that sec-

---

1. All statutory references are to the current version of the Texas Health and Safety Code unless otherwise indicated.

tion 841.085 punishes the person for prior criminal conduct. We said in *Mullens* that section 841.085 "deals only with violations of the requirements in the commitment order, not any prior criminal conduct." *Id.* Shaw's arguments fail for the same reasons stated in *Mullens* and *Beasley*.

■■ More recently, in *In re Martinez*, 98 S.W.3d 373, 375 (Tex.App.-Beaumont 2003, pet. filed), we again rejected a challenge that the Act was unconstitutional as punitive in nature. There we also rejected an argument that the Act was punitive as applied to Martinez. We stated:

> His issue presupposes a violation of a specific condition of the commitment order. The record reveals no violation. When an issue depends on contingent or hypothetical facts, or upon events that have not occurred, the issue is not ripe for review.

We cited *Patterson v. Planned Parenthood of Houston and Southeast Texas, Inc.*, 971 S.W.2d 439, 443 (Tex.1998). *Id.* We repeat this observation by reproducing an extended portion of the *Patterson* opinion setting out and examining the doctrine of ripeness as it exists in Texas:

> Ripeness, like standing, is a threshold issue that implicates subject matter jurisdiction, *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998), and like standing, emphasizes the need for a concrete injury for a justiciable claim to be presented.... But if standing focuses on the question of who may bring an action, *see Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 626–27 (Tex.1996), ripeness examines when that action may be brought. At the time a lawsuit is filed, ripeness asks whether the facts have developed sufficiently so that an injury has occurred or is likely to occur, rather than being contingent or remote.... Ripeness thus focuses on whether the

case involves "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." [13A] WRIGHT [ET AL., FEDERAL PRACTICE AND PROCEDURE], § 3532.1, at 130 [ (2d ed.1984) ].

*Patterson*, 971 S.W.2d at 442–43 (selected citations omitted).

The record before us also entirely lacks evidentiary support showing "that an injury has occurred or is likely to occur, rather than being contingent or remote." *Id.* at 442. To the extent Shaw argues the Act is unconstitutional as applied to him, again, as in *Mendoza–Martinez*, no violation appears in the record.

■■ Shaw further contends that the requirement of a tracking device in section 841.082(5) serves both a punitive and deterrent function. Citing a Court of Criminal Appeals case which holds that electronic monitoring is an unreasonable condition of deferred adjudication probation, Shaw argues that if electronic monitoring is too harsh a punishment for a probationer who has not been convicted of a crime, how much more punitive must it be for someone who is civilly committed? *See Ex parte Gingell*, 842 S.W.2d 284, 285 (Tex. Crim.App.1992). As we noted in *Beasley*, the "restraints [in section 841.082] in the context of involuntary civil commitments have historically been treated as civil, not punitive." 95 S.W.3d at 607 (citing *Kansas v. Hendricks*, 521 U.S. 346, 363, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)). Further, as pointed out in *Hendricks*, the "State may take measures to restrict the freedom of the dangerously mentally ill. This is a legitimate nonpunitive governmental objective and has been historically so regarded." *Hendricks*, 521 U.S. at 363, 117 S.Ct. 2072. Even though the person committed under the Kansas statute is subject to in-patient confinement, the Su-

preme Court found the statute non-punitive. *Id.* Here, the person civilly committed is treated on an out-patient basis and monitored by a tracking device that will "track his location." *See* §§ 841.002(10), 841.082(a)(5). The employment of the device to track the whereabouts of a sexually violent predator who is on out-patient treatment satisfies a legitimate nonpunitive government objective of protecting society from what the Legislature has termed "the risk of repeated predatory behavior." *See* § 841.001. Issue one is overruled.

■ Issue two complains that due process was violated when the trial court refused to submit the issue of volitional control to the jury. The record reflects that Shaw requested the following question be submitted to the jury: "Do you find beyond a reasonable doubt that Christopher Shaw has a behavior abnormality that makes him likely to reoffend?"[2] Shaw's proposed question was to be in addition to the question submitted by the trial court which read: "Do you find beyond a reasonable doubt that **CHRISTOPHER SHAW** suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence?"

The trial court also provided the jury with two definitions to which no objections were made. They read as follows:

"BEHAVIORAL ABNORMALITY," means a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the per-

son to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person.

"PREDATORY ACT," means an act that is committed for the purpose of victimization and that is directed toward:

(A) a stranger;

(B) a person of casual acquaintance with whom no substantial relationship exists; or

(C) a person with whom a relationship has been established or promoted for the purpose of victimization.

These definitions are taken directly from § 841.002(2) & (5) of the Texas SVP act.

Shaw relies on *Kansas v. Crane*, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), in which the Supreme Court held "there must be proof of serious difficulty in controlling behavior" before a court can civilly commit a sexually violent predator. *Id.* at 413, 122 S.Ct. 867. We believe the definitions provided by the court adequately presented the *Crane* issue to the jury and thus satisfied the requirement of due process. *In re Commitment of Almaguer*, 117 S.W.3d 500, at 502, (Tex.App.-Beaumont 2003, no pet. h.). Issue two is overruled.

■ Issue three contends that Chapter 841 of the Texas Health and Safety Code is unconstitutionally vague and violates the separation of powers doctrine. We have addressed and rejected similar complaints

---

**2.** This wording is contained in Shaw's written proposed instruction as required to be submitted by Tex.R. Civ. P. 278. Said written proposed instruction must also be substantially correct. *Id.* During the charge conference, however, Shaw's counsel read the following proposed question into the record: "[D]o you find beyond a reasonable doubt that Christopher Shaw has serious difficulty in controlling his behavior that would make him likely

to reoffend in a sexual manner[?]" The trial court orally refused said requested instruction and permitted Shaw to fax his written request to the trial court at a later time. Opposing counsel representing the State agreed to this process and agreed that it preserved Shaw's error for appellate review purposes. We will address this issue based upon the language contained in the *written* proposed question, not the *orally* proposed question.

in our prior cases. *See Beasley*, 95 S.W.3d at 608–09; *Mullens*, 92 S.W.3d at 887–88. Additionally, in the instant case, we rely on our discussion of the ripeness doctrine in overruling this issue. Shaw's argument in his brief essentially attacks the potential application of the Texas SVP act via speculation and criticism of the "delegat[ion][of] responsibility" to the various supervisory bodies described in the act. This is also the basis for Shaw's separation of powers complaint. We reiterate our observation from issue one that we must leave room for the administrative and supervisory bodies involved with the Texas SVP act to promulgate whatever procedures they see fit. These bodies must be permitted to "perform their functions unimpeded." *Patterson*, 971 S.W.2d at 443. Issue three is overruled.

■ Shaw's fourth issue avers a violation of his Fifth Amendment privilege against self-incrimination occurred when evidence of his interview with two doctors was admitted at trial. The State replies that Shaw failed to raise such objection at trial prior to the testimony of either Dr. Sharon Rogers or Dr. Rahn Bailey. Shaw's "Reply Brief" virtually concedes the State's procedural default response. We do not agree with Shaw that this issue may be raised for the first time on appeal because it "presents a question of constitutional magnitude." Because Shaw failed to raise his Fifth Amendment violation objection at trial, he failed to preserve the issue for appellate review. TEX.R.APP. P. 33.1(a)(1)(A). Issue four is overruled.

■ Shaw's final appellate issue again presents us with application of the ripeness doctrine. He contends that § 841.085, the "Criminal Penalty" section, and the terms of the final judgment entered by the trial court violate his Fifth Amendment privilege against self-incrimination in that the final judgment of com-

mitment orders Shaw to submit to polygraph examinations as a requirement of civil commitment. Contained within the "Final Judgment and Order of Civil Commitment" is commitment requirement 9(a), which requires Shaw to "submit to periodic monitoring with a polygraph . . . as directed by the case manager[.]"

■ Once again, Shaw presents us with a "parade of horrors" in his brief as to what *could* result from his refusal to comply with the trial court's order to submit to a polygraph procedure. We again can only respond that such injuries are merely contingent and have not occurred. We observe without deciding that should Shaw face some sort of civil "discipline" based upon results of a polygraph procedure, he may have recourse to invoke the provisions of TEX.R. EVID. 510, as well as other provisions contained under Article V of said rules. With regard to any subsequent criminal prosecution which may result from responses provided by Shaw during the court-ordered polygraph procedure, we refer him to the observations contained in *Allen v. Illinois*, 478 U.S. 364, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986) (U.S. Supreme Court recognized Illinois Supreme Court holding, under Illinois sexually dangerous offender statute, that an individual's statements to a psychiatrist in a compulsory examination under said statute could not be used against him in any subsequent criminal proceedings). We do not mean to imply or infer the applicability of either *Allen* or the privileges contained in the Rules of Evidence to any subsequent appeal involving the Texas SVP act. We analyze and decide appeals based upon the record before us and the arguments made by counsel. As for Shaw's complaint under issue five, we again hold that it is not ripe for consideration, and we rely on the authorities and

discussion set-out in issue one. Issue five is dismissed.

Having disposed of all of Shaw's appellate issues, we affirm the judgment and order of civil commitment entered by the trial court.

AFFIRMED.

DON BURGESS, Justice, dissenting.

I respectfully dissent to the resolution of issue two. *See In re Commitment of Almaguer,* 117 S.W.3d at 508, (Tex.App.-Beaumont 2003, no pet. h.)(Burgess, J. dissenting).