**In re COMMITMENT OF James Ricky RICHARDS**

and

**Ex Parte James Ricky Richards.**

**Nos. 09–05–503 CV, 09–05–504 CV.**

Court of Appeals of Texas, Beaumont.

Submitted June 22, 2006.

Delivered Sept. 14, 2006.

James Ricky Richards, Houston, pro se.

Joey Robertson, Special Prosecution Unit, Civil Division, Huntsville, Greg Ab-
bott, Atty. Gen., Barry R. McBee, First Asst. Atty. Gen., Edward D. Burbach, Deputy Atty. Gen. for Litigation, Jeff L. Rose, Chief, Gen. Litigation Division, Wylie E. Kumler, Asst. Atty. Gen., Litigation Division, Austin, for appellee.

Before GAULTNEY, KREGER, and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

In 2003, the trial court ordered the civil commitment of appellant James Ricky Richards after the jury found him to be a sexually violent predator ("SVP"). *See* Tex. Health & Safety Code Ann. §§ 841.001–841.150 (Vernon 2003 & Supp. 2006). In its order, the court committed Richards to outpatient treatment to be coordinated by a case manager and ordered that Richards participate in a course of treatment to be determined by the Interagency Council on Sex Offender Treatment ("Council"). Richards appealed from the Final Judgment and Commitment Order, and we affirmed. *In re Commitment of Richards*, No. 09–03–168 CV, slip op. at 2, 2004 WL 256744 (Tex.App.-Beaumont, Feb.12, 2004, no pet.). Subsequently, Richards filed an application for writ of habeas corpus attacking certain terms of his treatment plan. He now appeals from the trial court's denial of his application seeking relief through a writ of habeas corpus.

In addition, and on the same date it heard Richards's writ application, the trial court held a biennial review hearing as required by the Health and Safety Code. *See* Tex. Health & Safety Code Ann. § 841.102 (Vernon 2003). Richards also filed a notice of appeal from the trial court's modification of his commitment terms following his biennial review. We

consolidated both matters for purposes of appeal.

In his habeas corpus application, Richards challenged his placement at the Ben Reid Facility and certain restrictions on his liberty under his treatment plan. With respect to the treatment plan, Richards complains of the terms that: (1) interfere with his employment; (2) permit his case manager or the facility to review his mail; (3) restrict his ability to use public transportation; (4) restrict his ability to have contact with persons unapproved by his case manager; and (5) require any prospective sexual partner to have a meeting with his case manager before having sexual contact with him.

In his appeal from the court's biennial review order, Richards asserts that amendments to Chapter 841 do not apply to him because he was not "serving a sentence *in* the Texas Department of Criminal Justice" when the Legislature amended the statute. Therefore, he asserts that the trial court erred in changing his commitment terms by ordering that he reside at a halfway house.

As to each appeal, we requested briefing from both parties regarding whether we have appellate jurisdiction to review the trial court's orders. Both the State and Richards responded to our jurisdictional inquiry. With respect to our jurisdiction over the appeal from a denial of a writ of habeas corpus, the parties disagree about whether we have jurisdiction. With respect to our jurisdiction over an appeal from a biennial review order, both parties contend that we have jurisdiction. However, neither the State nor Richards cite to statutory provisions that authorize an appeals court to exercise jurisdiction over an appeal of a biennial review order. Richards argues in his brief that he "cannot locate any statute which prevents this court from exercising its appellate jurisdiction."

Assumption of appellate jurisdiction over an interlocutory order when not expressly authorized by statute or rule is jurisdictional fundamental error, which results in dismissal of the appeal. *N.Y. Underwriters Ins. Co. v. Sanchez*, 799 S.W.2d 677, 679 (Tex.1990) (per curiam) (citing *Long v. Humble Oil & Refining Co.*, 380 S.W.2d 554 (Tex.1964); *McCauley v. Consol. Underwriters*, 157 Tex. 475, 304 S.W.2d 265 (1957)). We are required to review such error even if no party asserts it. *Id.; see M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex.2004). Therefore, before addressing the merits of Richards's complaints, we address our jurisdiction over each of his appeals.

## JURISDICTION OVER APPEAL— BIENNIAL REVIEW ORDER

On appeal, Richards asserts that the trial court relied on amendments to the SVP statute in ordering that he reside in a halfway house. Richards complains that the trial court interpreted amendments to the statute to apply to him when he contends they do not. We first address our jurisdiction over his appeal of the trial court's biennial review order.

The Texas Constitution grants jurisdiction to courts of appeals over "all cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law." Tex. Const. art. V, § 6. With respect to Chapter 841 proceedings, the district court retains jurisdiction over commitment reviews and petitions for release. Tex. Health & Safety Code Ann. § 841.082(d) (Vernon Supp.2006). Thus, the district court had jurisdiction over the biennial review proceeding.

■ Based on article V, section 6 of the Texas Constitution, we have jurisdiction over the appeal *unless restricted by law.* The Legislature has restricted our appellate jurisdiction over civil cases. In civil cases, absent a statute providing otherwise, our appellate jurisdiction is limited to those cases in which the amount in controversy exceeds one hundred dollars, exclusive of interest and costs, and in which the judgment is final. *See* Tex. Gov't Code Ann. § 22.220(a) (Vernon 2004); Tex. Civ. Prac. & Rem.Code Ann. § 51.012 (Vernon 1997); *Lehmann v. Har–Con Corp.,* 39 S.W.3d 191, 195 (Tex.2001) (generally, appeal in a civil case may only be taken from a final judgment). With respect to orders that are not considered final, "[i]nterlocutory orders may be appealed only if permitted by statute." *Jack B. Anglin Co., Inc. v. Tipps,* 842 S.W.2d 266, 272 (Tex. 1992) (orig. proceeding). The Legislature has not included biennial review orders among the types of interlocutory orders over which we have jurisdiction. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014 (Vernon Supp.2006).

■ Therefore, because generally a judgment in a civil case must be final before an appellate court exercises jurisdiction over it, we further consider whether the portion of a biennial review order modifying Richards's commitment requirements is "final." The Texas Supreme Court recently reiterated that " 'the term final, as applied to judgments, has more than one meaning.' " *Sultan v. Mathew,* 178 S.W.3d 747, 751 (Tex.2005) (quoting *Street v. Honorable Second Court of Appeals,* 756 S.W.2d 299, 301 (Tex.1988)). The Supreme Court explained:

> The term 'final judgment' applies differently in different contexts. A judgment is 'final' for purposes of appellate jurisdiction if it disposes of all issues and parties in a case. The term 'final judg-

ment' is also used with reference to the time when trial or appellate court power to alter the judgment ends, or when the judgment becomes operative for the purpose of res judicata.

*Id.*

To evaluate whether a biennial review order is "final," we examine the purposes of the biennial review. The issues before the court in a biennial review are whether the requirements imposed on a person under Chapter 841 should be modified; or, whether probable cause exists to believe that a person's behavioral abnormality has changed to the extent that the person is no longer likely to engage in a predatory act of sexual violence. *See* Tex. Health & Safety Code Ann. § 841.102 (Vernon 2003). Richards questions the trial court's power to alter its prior commitment order, which required that he reside in Harris County, to expressly require that he now reside in a halfway house in Harris County. At the hearing, Richards testified that the proposed change to the commitment order would require him to leave his apartment. On appeal, Richards does not complain of the trial court's finding that there had been no significant change regarding his SVP status.

■ Therefore, the issue before us is whether we have appellate jurisdiction to review the trial court's order modifying its residency requirement imposed on Richards. *Id.* § 841.102(c)(1). We do not address whether we have appellate jurisdiction over a trial court's probable cause decisions made under section 841.102(c)(2) as Richards's appeal presents no issue under that section of Chapter 841. *See Id.* § 841.102(c)(2).

The Health and Safety Code requires the trial court to restrict an SVP's liberty to select his residence. *Id.* § 841.082 (Vernon Supp.2006). The current statute provides that a court, among other re-

quirements, *shall* require a committed "person to reside in a Texas residential facility under contract with the [Council on Sex Offender Treatment] or at another location or facility approved by the council." *Id.* At the time the court entered its final judgment and order committing Richards, the statute mandated that the trial court require a committed person "to reside n a particular location." Act of May 30, 1999, 76th Leg., R.S., ch. 1188 § 4.01, sec. 841.082(a)(1), 1999 Tex. Gen. Laws 4147 (amended 2005) (current version at Tex. Health & Safety Code Ann. § 841.082(e) (Vernon Supp.2006)). Thus, both versions of the statute at issue contemplated that the trial judge would have power over where a SVP could reside.

■■■ In addition, section 841.082(e) states that "[t]he requirements imposed under Subsection (a) may be modified at any time after notice to each affected party to the proceedings and a hearing." Tex. Health & Safety Code Ann. § 841.082(e) (Vernon Supp.2006). This provision is consistent with the general rule that a trial court retains plenary power over its interlocutory orders until a final judgment is entered. *Fruehauf Corp. v. Carrillo,* 848 S.W.2d 83, 84 (Tex.1993). With this power, a trial court can exercise its authority to change or modify an interlocutory order at any time prior to expiration of its plenary power. *Mendez v. San Benito/Cameron County Drainage Dist. No. 3,* 45 S.W.3d 746, 754 (Tex.App.-Corpus Christi 2001, pet. denied). Thus, it is apparent from both the current statute and its prior version that a trial court can modify many conditions of its commitment order at any time after notice to each affected party. In addition, the trial judge can modify these conditions of commitment pursuant to the biennial review. Because commitment orders are subject to modifi-

cation, we question the contention that they are "final."

In evaluating the finality of commitment orders, we are also guided by the Texas Supreme Court's opinion in Lehmann. In that case, the Court stated:

> Though its origins are obscure and its rationale has varied over time, the general rule, with a few mostly statutory exceptions, is that an appeal may be taken only from a final judgment. A judgment is final for purposes of appeal if it disposes of all pending parties and claims in the record, except as necessary to carry out the decree.

39 S.W.3d at 195. The *Lehmann* Court further held that a judgment issued without a conventional trial is not final unless it "actually disposes of all claims and parties then before the court, regardless of its language, or it states with unmistakable clarity that it is a final judgment as to all claims and all parties." *Id.* at 192.

Changes made in a commitment order under Section 841.102(c)(1) of the Health and Safety Code are made without a conventional trial. With respect to whether the court's change in its biennial review order actually disposes of the issue regarding Richards's residence, we look to the language of the order. The biennial review order states "JAMES RICHARDS shall reside in a halfway house unless otherwise approved by the Council on Sex Offender Treatment." Thus, this exception in the order makes the order even more conditional. The order does not require Richards to reside in a halfway house if another residence is approved by the Council. For example, the order would not prohibit Richards from living in his apartment if such an arrangement were to be approved by the Council. The location where Richards resides is subject to change at any time by the court or with the approval of the Council on Sex Offend-

er Treatment. As a result, with respect to Richards's residency requirement, the biennial order is not final.

Next, we examine whether the biennial review order meets the alternative test in *Lehmann*, which would allow it to be considered final if it states with unmistakable clarity that it is a final judgment as to all claims. Generally, commitment requirements imposed on SVPs anticipate ongoing treatment, and the biennial review allows the court to make adjustments it deems necessary to the restrictions. Therefore, it is not surprising that trial courts entering biennial review orders in SVP cases do not include language suggesting that a biennial review is final when in all probability it is not. The language in the biennial review order before us contains no language that suggests the trial court considered it final. We hold the order does not state with unmistakable clarity that it is a final judgment as to all claims. Having considered both tests of finality articulated by the Texas Supreme Court, we conclude that we have no appellate jurisdiction over the issue Richards raises regarding the court's 2005 biennial review order.

We find further support in the Health and Safety Code for our conclusion that we generally lack jurisdiction over commitment-requirement modifications that occur during biennial review proceedings. In cases of court-ordered mental health services, the Legislature expressly provided for a right to appeal from the renewal or modification of an order. Tex. Health & Safety Code Ann. § 574.070 (Vernon 2003). In contrast, no similar right to appeal modified orders appears in the chapter pertinent to SVPs. *Compare* Tex. Health & Safety Code Ann. §§ 841.001–841.150 (Vernon 2003 & Supp.2006) *with* Tex. Health & Safety Code Ann. § 574.070 (Vernon 2003). The Texas Supreme Court considered such statutory distinctions in

*PPG Industries, Inc. v. JMB/Houston Centers Partners L.P.*, 146 S.W.3d 79, 84 (Tex.2004). The Court concluded:

A statute's silence can be significant. When the Legislature includes a right or remedy in one part of the code but omits it in another, that may be precisely what the Legislature intended. If so, we must honor that difference.

*Id.* Had the Legislature intended to give us general appellate jurisdiction over modifications to SVP commitment orders, it could have so provided in Chapter 841.

■ Although we can conceive of no benefit from a rule that allows our review in a habeas appeal of some conditions imposed on some SVPs but denies appellate review of these same issues in biennial orders, "we may not enlarge appellate jurisdiction absent legislative mandate." *Tipps*, 842 S.W.2d at 272. Should the Legislature desire to allow appellate review over modifications to SVP commitment orders, the Civil Practice and Remedies Code can be amended to include biennial review orders among the interlocutory orders over which we have jurisdiction, or Chapter 841 could be amended to specifically provide appellate review of modifications to commitment orders.

In summary, we conclude that the 2005 biennial review order did not finally dispose of Richards's complaint regarding where he is to reside. We hold that we have no jurisdiction over the portion of Richards's appeal concerning his complaints related to his 2005 biennial review. We dismiss Richards's appeal in Cause No. 09–05–503 CV, which consists of his direct appeal from the court's biennial review order.

## JURISDICTION OVER APPEAL— WRIT OF HABEAS CORPUS

In Cause No. 09–05–504 CV, Richards appeals from the trial court's denial of his

application for a writ of habeas corpus. The State contends that we do not have jurisdiction over Richards's habeas appeal because the trial court, in denying Richards's application, did not rule on the merits of his request for relief. To support this assertion, the State cites *Ex parte Bamburg*, 890 S.W.2d 549, 550 (Tex.App.-Beaumont 1994, no pet.). Second, the State contends that the restrictions placed on Richards in his treatment plan should not be addressed in a habeas proceeding, as Richards's commitment as a sexually violent predator is the basis upon which his liberties are impaired and he would not be released from the judgment adjudicating him as a SVP regardless of the ruling on the habeas petition.

On the other hand, Richards contends that we have jurisdiction over his habeas appeal because the trial court ruled on the merits of his application. Richards cites *Ex Parte Hargett*, 819 S.W.2d 866 (Tex. Crim.App.1991) for the proposition that appellate jurisdiction exists when a trial court holds a hearing on the merits of the claims raised in an application for a writ of habeas corpus.

■■■ Both of the cases relied on by the parties involved criminal habeas proceedings. We consider a sexually violent predator commitment proceeding to be a civil proceeding, and, as such, it is subject to civil rather than criminal statutes. *See In re Commitment of Fisher*, 164 S.W.3d 637, 639 (Tex.2005). "The appellate jurisdiction of the courts of civil appeals is not unlimited or absolute, but within constitutional limitations is subject to control by the Legislature." *Gray v. Rankin*, 594 S.W.2d 409, 409 (Tex.1980) (per curiam). Therefore, we look to the state's civil statutes to determine the scope of our jurisdiction over appeals concerning civil habeas proceedings that arise from the civil commitment of SVPs.

■■■ The Health and Safety Code addresses the appellate rights of SVPs as follows: "Except as otherwise provided by this subsection, a civil commitment proceeding is subject to the rules of procedure and appeal for civil cases. To the extent of any conflict between this chapter and the rules of procedure and appeal for civil cases, this chapter controls." Tex. Health & Safety Code Ann. § 841.146(b) (Vernon Supp.2006). Thus, the Legislature recognized that a party could appeal decisions in SVP cases. Although Chapter 841 contemplates possible appeals in SVP commitment proceedings, it does not operate as a grant of appellate jurisdiction over all appeals from all trial court decisions in SVP cases. Therefore, we look to other legislative provisions to determine our appellate jurisdiction as directed by article V, section 6 of the Texas Constitution, which provides that "[Courts of Appeals] shall have such other jurisdiction, original and appellate, as may be prescribed by law."

The usual sources of civil appellate jurisdiction over civil cases are found in the Civil Practice and Remedies Code and the Government Code. The Civil Practice and Remedies Code provides that "[i]n a civil case in which the judgment or amount in controversy exceeds $100, exclusive of interest and costs, a person may take an appeal or writ of error to the court of appeals from a final judgment of the district or county court." Tex. Civ. Prac. & Rem.Code Ann. § 51.012 (Vernon 1997). The Government Code contains a similar provision. Tex. Gov't Code Ann. § 22.220(a) (Vernon 2004). Both of these statutes apply to final judgments.

■■■ The ruling from which Richards seeks relief is entitled an order, not a judgment. However, despite a ruling's embodiment in an order, Texas law recognizes that certain types of orders are final

and appealable. *See* 6 McDonald & Carlson, Texas Civil Practice § 11:3 (2d ed. 1998 & Supp.2006). A ruling in a civil habeas case is among those orders considered final and appealable.

In *Harbison v. McMurray,* 138 Tex. 192, 158 S.W.2d 284 (1942), the Texas Supreme Court analyzed whether the lower appellate court erred in dismissing a civil habeas appeal for want of jurisdiction. The Supreme Court reversed and remanded so the Court of Civil Appeals could consider the case on its merits. *Id.* at 288. Thus, in *Harbison* the Texas Supreme Court considered the trial court's denial of an application for civil habeas relief to be a final judgment for purposes of appeal. *Harbison* dictates that we have appellate jurisdiction over Richards's appeal.

 The State argues that we have no jurisdiction over an appeal from a trial court's order denying habeas relief when the trial court does not rule on the merits of the habeas application. Without deciding whether or not a merits-based ruling is a jurisdictional requirement in a civil case, as it is in a criminal case, we disagree with the State's argument that the trial court did not consider the merits of Richards's application for habeas relief.

In this case, the trial court's ruling followed an evidentiary hearing where the trial court allowed Richards to present evidence regarding his complaints. The transcript of the hearing on the writ application reflects that at the beginning of the hearing, the trial judge asked Richards if he had any evidence to present on his habeas claims. The court then swore Richards as a witness and stated that Richards could testify on his own behalf. At the State's request, the court judicially noticed the final judgment and order of commitment. After Richards explained his allegations, the court stated, "I know what you're alleging. But what evidence do you have?" Richards then complained of two of the requirements of the case management plan involving his mail and his ability to have contact with family members, casual relations, and friends. At the hearing, Richards also testified that his procedural due process rights were violated because his case manager required him to reside in the Reid facility without a prior court order committing him to a halfway house.

Thus, in Richards's case, the court conducted a hearing in which it allowed testimony and provided an opportunity for the parties to present evidence. At the conclusion of the hearing, the court denied Richards's application for habeas relief.

The transcript of the hearing reflects that this is not a case where the trial court refused to hear evidence on the habeas application. "Here, the court went beyond merely deciding not to issue the writ of habeas corpus. The court, in this instance, undertook to rule on the merits of the application." *Ex parte Hargett,* 819 S.W.2d at 869. The hearing conducted in this case makes it distinguishable from the hearing conducted in *Ex Parte Bamburg,* which is relied on by the State. In *Bamburg,* the record of the hearing "contains no evidence in the form of sworn testimony, or any indication that any physical objects or documents, other than applicant's third supplemental application, were admitted into evidence." 890 S.W.2d at 550. We agree with Richards that if a hearing is required, the standards of *Ex parte Hargett* regarding a merits-based hearing were satisfied here.

On the record before us, we conclude that the trial court did not simply reject Richards's writ application without considering the merits of any of his complaints. As a result, we need not address whether the right to appeal an order in a civil

habeas rests on whether the trial court conducted an evidentiary hearing.

■ The State also argues that we have no jurisdiction over the appeal because Richards does not challenge the legality of his civil commitment. While we agree that securing one's release from unlawful imprisonment is typically the restraint addressed in a habeas proceeding, the writ may also address other restraints on liberty. For example, courts have reviewed various restrictions that do not amount to confinement through habeas proceedings. *Ex parte Alakayi*, 102 S.W.3d 426, 432 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd) (restrictions imposed in community supervision order limiting contact with minors and creating a child safety zone); *In re Pierre*, 50 S.W.3d 554, 558–59 (Tex.App.-El Paso 2001, orig. proceeding) (restrictions imposed for failing to pay child support, and requiring father to submit to testing for drugs and alcohol); *In re Ragland*, 973 S.W.2d 769, 771 (Tex.App.-Tyler 1998, orig. proceeding) (restriction requiring a person to perform a certain amount of community service each week); *Ex parte Duncan*, 796 S.W.2d 562, 564 (Tex.App.-Houston [1st Dist.] 1990, orig. proceeding) (restrictions requiring a person in violation of child support order to report monthly to a probation officer and limiting his right to travel). With respect to a criminal habeas proceeding, the writ extends to persons in custody *or under restraint*. Tex.Code Crim. Proc. Ann. art. 11.01 (Vernon 2005). "By 'restraint' is meant the kind of control which one person exercises over another, not to confine him within certain limits, but to subject him to the general authority and power of the person claiming such right." Tex.Code Crim. Proc. Ann. art. 11.22 (Vernon 2005).

■ We see no reason to apply a definition of restraint that would provide applicants in civil habeas cases with less protection than that provided to applicants in criminal habeas cases. We hold that Richards's complaints about the restrictions affecting where he resides, whether he can work, whether he can use the public bus system, and whether his ability to associate with others should be limited are cognizable in a habeas proceeding even if removing these restrictions would not affect the judgment decreeing that he is a SVP.

■ Next, we evaluate the second prong of the Legislature's jurisdictional requirement-that the amount in controversy exceed one hundred dollars. In examining the amount in controversy, we consider " 'the sum of money *or the value of the thing* originally sued for....' " *Tune v. Texas Dep't of Pub. Safety*, 23 S.W.3d 358, 361 (Tex.2000)(quoting *Gulf, C. & S.F. Ry. Co. v. Cunnigan*, 95 Tex. 439, 67 S.W. 888, 890 (1902)). "The subjective value of a privilege, if asserted in good faith, establishes jurisdiction if that value meets the requisite amount in controversy." *Tune*, 23 S.W.3d at 362. In *Tune*, the Supreme Court held that a one hundred forty dollar handgun licensing fee exceeded the one hundred dollar jurisdictional amount and concluded "there is no need to evaluate whether the license has any additional value particular to Tune." *Id.*

■ In his application for habeas relief, one of Richards's complaints concerned the refusal of his case manager to allow him to return to his job upon his release from jail on April 7, 2005. Richards's sworn complaint indicates that his parole officer had approved his return to his place of employment. Attached to Richards's habeas application is a letter from his employer stating that "I hope that James will be available all work hours that we are open...." Richards filed his

application for habeas relief on June 6, 2005. Thus, it is clear from Richards's application that at the time he filed his application, one of his complaints concerned a restriction that prohibited his earning income for at least two months prior to the filing of his writ application. Although Richards did not quantify his loss of income at the hearing held in October 2005, a good faith estimate of the amount in controversy for the value of the lost opportunity to work for two months well exceeds the one hundred dollar jurisdictional amount. While Richards also complains of other restrictions in addition to the one on his ability to work, we need not further evaluate the value of Richards's other privileges because the restriction that prohibited his ability to work for two months satisfies the amount in controversy requirement.

Thus, with respect to the trial court's denial of the application for writ of habeas corpus, we hold that the final order denying his request for habeas relief constitutes a final judgment. We further hold that Richards's claims satisfy the jurisdictional amount in controversy requirement. Therefore, we have jurisdiction over Cause No. 09–05–504 CV and consider Richards's appeal from the trial court's denial of his writ application on its merits.

## HABEAS APPEAL—MERITS

A person's right to seek a trial court's review of a restraint on his liberty is guaranteed by the Texas Constitution, which states, "The writ of habeas corpus is a writ of right, and shall never be suspended. The Legislature shall enact laws to render the remedy speedy and effectual." Tex. Const. art. I, § 12. The right to pursue a writ of habeas corpus is not limited to criminal matters. Under article V, section 8 of the Texas Constitution, a "district court [has] jurisdiction to issue original writs of habeas corpus in all cases where such writs are proper remedies under the established rules of law, whether such cases be of civil or criminal nature." *Legate v. Legate*, 87 Tex. 248, 28 S.W. 281, 282 (1894)(citing Tex. Const. art. V, § 8 (amended 1985)). Although this section of the Texas Constitution was amended after the Supreme Court's decision in *Legate*, the subsequent amendments further broadened the jurisdiction of district courts. Tex. Const. art. V, § 8 interp. commentary (Vernon 1993).

In his habeas appeal, Richards does not challenge the process through which a jury found him to be a SVP, but instead complains of seven specific restrictions that he contends are sufficient restraints on his liberty to allow their review in a habeas proceeding. Richards additionally complains that the trial court violated the Separation of Powers Doctrine by delegating the determination of his treatment to the Interagency Council on Sex Offender Treatment.

Richards complains of these restrictions on his liberty: (1) the requirement that he reside at the Reid Community Residential Facility rather than his apartment; (2) the restrictions placed on his ability to work; (3) the restriction preventing him from using a public bus; (4) the requirement allowing his mail to be reviewed by his case manager; (5) the requirement restricting his contact with family members, casual relations, or friends, unless approved by his case manager; (6) the requirement prohibiting his contact with potential victims, defined as children under eighteen years of age and all females; and (7) the requirement restricting him from having sexual contact with another without informing such person that he is a SVP and signing a release allowing his case manager to communicate with such person before any sexual contact.

Commitment requirements that intrude on an SVP's constitutionally protected freedoms are not necessarily invalid. *See In re Fisher*, 164 S.W.3d at 656. In Richards's case, we previously rejected his constitutional vagueness challenge to restrictions requiring that he participate in a specific course of treatment and making him subject to any other requirements determined necessary by the judge. *In re Commitment of Richards*, No. 09–03–168 CV, slip op. at 2, 2004 WL 256744, at \*2.

■ In a habeas proceeding, the writ applicant bears the burden of proving his allegations. *See Ex parte Peterson*, 117 S.W.3d 804, 818 & n. 60 (Tex.Crim.App. 2003)(per curiam) (explaining that defendant bears burden of proving double jeopardy claim by preponderance of evidence on writ of habeas corpus); *Ex parte Kimes*, 872 S.W.2d 700, 703 (Tex.Crim. App.1993) (explaining that habeas applicant must prove a constitutional violation); *Ex parte Thomas*, 906 S.W.2d 22, 24 (Tex. Crim.App.1995) (explaining that habeas applicant must prove factual allegations by a preponderance of the evidence); *Ex parte Adams*, 768 S.W.2d 281, 287–88 (Tex. Crim.App.1989) (explaining that habeas applicant assumes the burden of proving his factual allegations); *see also In re Dupree*, 118 S.W.3d 911, 914 (Tex.App.Dallas 2003, orig. proceeding) (challenging terms in civil contempt order); *In re Brown*, 114 S.W.3d 7, 9 (Tex.App.-Amarillo 2003, orig. proceeding); *Ex parte Alakayi*, 102 S.W.3d at 429–30 (reviewing restraint prohibiting contact with minors and creating a child-safety zone imposed as a condition of community supervision).

■ When an appellant alleges that a statute is unconstitutional, we begin with a presumption that the Legislature did not act unreasonably or arbitrarily. Tex. Gov't Code Ann. § 311.021 (Vernon 2005); *In re Commitment of Fisher*, 164 S.W.3d

at 645; *HL Farm Corp. v. Self*, 877 S.W.2d 288, 290 (Tex.1994); *Whitworth v. Bynum*, 699 S.W.2d 194, 197 (Tex.1985); *Spring Branch Indep. School Dist. v. Stamos*, 695 S.W.2d 556, 558 (Tex.1985). Thus, in a habeas proceeding, Richards bears the burden of proving his allegation that the statute as applied to him is unconstitutional or that a restraint is unreasonable because it is not related to the statute's commitment goals. *Ex parte Kimes*, 872 S.W.2d at 703; *Ex parte Thomas*, 906 S.W.2d at 24.

■ To evaluate whether the trial court bused its discretion in denying Richards's writ, we must evaluate whether Richards proved the restrictions were unconstitutional or unreasonable. First, we look to the purposes of the restrictions. Generally, the purposes are to "ensure the person's compliance with treatment and supervision and to protect the community." Tex. Health & Safety Code Ann. § 841.082(a) (Vernon Supp.2006). To reach these goals, the Legislature granted trial courts broad authority that includes the powers to require the person to establish residency requirements, to prohibit the person's contact with a victim or potential victim, to require the person's participation in a specific course of treatment, and to impose any other requirement determined necessary by the judge. Tex. Health & Safety Code Ann. § 841.082(a)(1), (2), (4), (9) (Vernon Supp. 2006). Therefore, to prove that the conditions imposed in a commitment order are unreasonable in a habeas corpus proceeding, a SVP must prove by a preponderance of the evidence that the trial court's commitment requirements fail to serve any of the statute's goals of treatment, supervision, and community protection.

■ The evidence that Richards presented at his habeas hearing does not ad-

dress how or why the restrictions do not serve the goals of treatment, supervision, or community protection. He presented no testimony from any expert witnesses that the restrictions do not reasonably serve the statute's goals. The commitment requirements about which Richards complains are within the authority granted the court by the Legislature, and they have presumptive validity. Richards's evidence fails to demonstrate how the restrictions are unconstitutional as applied to him.

With respect to the requirement that Richards reside at the Ben Reid facility, certain facts are pertinent. The commitment order, before modification, required Richards to reside in Harris County and to participate in a course of treatment determined by the Interagency Council on Sex Offender Treatment. The transcript of Richards's habeas hearing reflects that the court took judicial notice of a progress report, which reflects that Richards was residing in an apartment and working when he violated the terms of his treatment plan's restrictions on sexual contact. He was then placed on lockdown and transferred to the Ben Reid facility. Richards argued at the hearing that because his placement at the Ben Reid facility was without a prior court order that expressly required him to be housed at a halfway house, the Council could not require him to reside there.

Richards misinterprets the court's Final Judgment and Commitment Order. It required that he participate in a course of treatment required by the Interagency Council on Sex Offender Treatment. At his habeas hearing, Richards failed to show that his placement at the Ben Reid facility was not a required course of treatment by the Council, or that the placement was not a reasonable means of achieving the goals of treatment, supervision, or community protection. If living at a halfway house such as the Ben Reid facility serves to achieve the statute's goals, it can be included as part of a treatment plan under the Final Judgment and Commitment Order. In the absence of any proof that the placement of Richards in a halfway house does not further Chapter 841's objectives, we reject Richards's argument that a prior court order specifying that he reside in a halfway house is a necessary prerequisite to the Council's requiring that he change residences.

■ Further, Richards's evidence at the habeas hearing does not address how the remaining restrictions were not reasonably related to the statute's goals of treatment, supervision, or community protection. Although his liberty to associate with others, particularly children and females, is significantly restricted, it appears that Richards can obtain permission to have contact with others following the approval of his case manager and treatment provider. Richards's evidence at the habeas hearing did not address whether the Council unreasonably withheld its permission with respect to any requests that he might have made to place persons on his approved contact list, and Richards's brief reflects that his case manager has approved contact with others, including a female.

Richards's evidence also does not address why the restraint allowing his case manager to review his mail (except for legal or governmental mail) is unreasonable because it does not serve the goals of treatment, supervision, or community protection. Richards's evidence likewise fails to address how the restrictions on his employment or using the bus do not serve the statute's goals.

At the habeas hearing, Richards bore the burden of proving his contentions that the restrictions were unreasonable or un-

constitutional as applied to him. Different SVPs may require different restrictions, and in habeas proceedings the burden to prove that a particular restriction is unreasonable or unconstitutional as applied is on the applicant for habeas relief. We hold that Richards failed to prove by a preponderance of the evidence that the restrictions about which he complains are either unreasonable or unconstitutional as applied to him.

■ Finally, we address Richards's complaint that the Council's imposing supervision and treatment requirements violates the separation of powers doctrine. The Separation of Powers Clause provides:

The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another; and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

Tex. Const. art II, § 1.

■ Richards failed to raise his separation of powers argument in his application for writ of habeas corpus. A constitutional challenge must generally be asserted in the trial court to be raised on appeal; this requirement allows the trial court the opportunity to rule on the issue. *See* Tex.R.App. P. 33; *In re Commitment of Fisher*, 164 S.W.3d at 656. Because Richards did not provide the trial judge with an opportunity to address his separation of powers argument, it is not preserved for appeal.

Moreover, we rejected Richards's separation of powers argument in his prior appeal. *In re Commitment of Richards*. We rejected similar arguments in other cases. *Beasley v. Molett*, 95 S.W.3d 590, 608–10 (Tex.App.-Beaumont 2002, pet. denied); *In re Commitment of Mullens*, 92 S.W.3d 881, 887–88 (Tex.App.-Beaumont 2002, pet. denied); *see also In re Commitment of Shaw*, 117 S.W.3d 520, 524–25 (Tex.App.-Beaumont 2003, pet. denied). Other courts have also rejected separation of powers arguments with respect to a trial court's power to impose SVP commitment orders containing the requirements that it deems necessary. *In re Commitment of Browning*, 113 S.W.3d 851, 864–65 (Tex.App.-Austin 2003, pet. denied).

The State asserts that the doctrine of collateral estoppel prevents Richards from again raising his separation of powers argument because he previously raised the argument in his direct appeal. The State relies on *State & County Mutual Fire Insurance Co. v. Miller*, 52 S.W.3d 693 (Tex.2001) as authority for its argument. As the State's collateral estoppel argument is not necessary to the final disposition of Richards's appeal, we defer deciding whether collateral estoppel also prevents Richards from obtaining further review of his separation of powers argument. Tex. R.App. P. 47.1.

In conclusion, we have jurisdiction over Richards's appeal of the trial court's order denying his application for a writ of habeas corpus. Having considered the arguments presented by the parties, and the evidence presented to the trial court, we find the trial court did not err in denying Richards's writ application.

Accordingly, the trial court's denial of Richards's application for writ of habeas corpus is affirmed, and Richards's appeal from the trial court's biennial review order is dismissed.

DISMISSED IN PART, AFFIRMED IN PART.

DAVID GAULTNEY, J., concurring and dissenting.

DAVID GAULTNEY, Justice, concurring in part and dissenting in part.

I respectfully disagree with the majority's holding that we have no jurisdiction over the direct appeal of the biennial review order. The statute provides that the trial judge shall conduct "a biennial review of the status of the committed person." Tex. Health & Safety Code Ann. § 841.102(a) (Vernon 2003). The rules of appeal for civil cases generally govern a civil commitment proceeding under the statute. *See* Tex. Health & Safety Code Ann. § 841.146(b) (Vernon Supp.2006). Chapter 841 contemplates possible appeals in sexually violent predator commitment proceedings. *See generally* § 841.146(b). The biennial judicial review hearing under section 841.102(c) is a civil commitment proceeding. *See* Tex. Health & Safety Code Ann. § 841.102(c) (Vernon 2003). Generally, a judgment is final for purposes of appeal if it disposes of all pending parties and claims. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex.2001). The order in question appears to dispose of the issues presented at the biennial review. The fact that the order can be modified following notice and another hearing should not make the biennial review order non-appealable. *See generally* Tex. Health & Safety Code Ann. § 841.082(e) (Vernon Supp.2006) (modification after notice and hearing). Otherwise, no order setting commitment requirements would be appealable, because the requirements are always subject to modification after notice and a hearing. *See id.*

I do not believe the supervision and treatment requirements permitted under Chapter 841 are the proper subject of a habeas corpus proceeding under the circumstances here. Appellant does not challenge the legality of the underlying civil commitment. His remedy should be by direct appeal of the order setting the requirements, not by a habeas corpus proceeding. "The writ of habeas corpus is an extraordinary writ, and neither a trial court nor an appellate court, either in the exercise of original or appellate jurisdiction, should entertain an application for writ of habeas corpus where there is an adequate remedy at law." *Ex parte Benavides*, 801 S.W.2d 535, 537 (Tex.App.-Houston [1st Dist.] 1990, writ dism'd w.o.j.) (citing *Ex parte Groves*, 571 S.W.2d 888, 890 (Tex.Crim.App.1978)). In my view, the majority's approach unnecessarily complicates the review process for commitment orders and makes the extraordinary habeas remedy the ordinary method for challenging commitment requirements.

Nevertheless, I agree with the majority's ultimate conclusion that the trial court did not err. I concur with the majority's substantive rulings concerning the commitment requirements.