**Warren Lee TUNE, Petitioner,**

v.

**TEXAS DEPARTMENT OF PUBLIC SAFETY, Respondent.**

No. 98–0679.

Supreme Court of Texas.

Argued Oct. 6, 1999.

Decided July 6, 2000.

Rehearing Overruled Aug. 24, 2000.

David R. Sweat, Arlington, for Petitioner.

John C. West, Jr., Texas Department of Public Safety, Chief of Legal Services, Valerie Fulmer, Rebecca K. Blewett, Austin, Texas Department of Public Safety, Tim Curry, Crim. Dist. Atty., Fort Worth, Jason D. Ray, Texas Department of Public Safety, Legal Section, Meredith Bishop Parenti, Office of the Attorney General of Texas, John Cornyn, Atty. Gen., Andy Taylor, Linda Eads, Gregory S. Coleman, Office of the Attorney General of Texas, Austin, for Respondent.

Justice ENOCH delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice OWEN, and Justice GONZALES join.

This case presents us with two principal issues. First, we must determine whether the courts of appeals have jurisdiction over appeals involving the grant or denial of a concealed-handgun license. We conclude that they do, because the amount in controversy in a license-denial case exceeds the statutory jurisdictional requirement of $100.

Second, we must consider the meaning of the term "convicted" as it is used in the Concealed Handgun Act, Subchapter H of the Texas Government Code.[1] We conclude that petitioner, who entered a felony guilty plea and completed a probation period, and as a result had his conviction set aside and the indictment dismissed, remains "con-

victed" for purposes of the Handgun Act. We therefore affirm the court of appeals' judgment that petitioner is not eligible for a concealed-handgun license.

## I. Background

In 1972, Warren Lee Tune pled guilty to a felony charge and was sentenced to two years' probation. After Tune completed a year and five months of his probation, the district court issued an order setting aside his conviction, dismissing the indictment, and discharging him from probation.

In 1996, Tune applied for a license to carry a concealed handgun under the Handgun Act. Generally, a person applying for such a license must pay the Texas Department of Public Safety ("DPS") a nonrefundable $140 license and application fee for a four-year license.[2] But to avoid renewal congestion at the end of the first four years, DPS initially promulgated a rule that required some applicants to pay a prorated nonrefundable $70 fee for a two-year license.[3] Tune applied for a license the first year that licenses were available. He was required, at random, to apply for a two-year license and pay a $70 fee.

DPS denied Tune's application because he had been convicted of a felony. Thereafter, as the Act permits, Tune requested a hearing before a justice of the peace.[4] Both DPS and the applicant may present evidence at such a hearing, and the justice of the peace determines whether the denial is supported by a preponderance of the evidence.[5] In this case, the justice court reversed DPS's denial of Tune's application and ordered DPS to issue a license to Tune.

DPS appealed the justice court's decision to the county court at law. The Act specifically authorizes such an appeal, and

1. See Tex.Rev.Civ. Stat. Ann. art. 4413(29ee) (repealed; now codified as Tex. Gov't Code §§ 411.171–.205) (all cites hereinafter to Tex. Gov't Code §§ 411.171–.205).

2. See Tex. Gov't Code §§ 411.174(a)(6), 411.183(b).

3. See id. § 411.183(e).

4. See id. § 411.180(a).

5. See id. § 411.180(c).

also states that "[t]he trial on appeal shall be a trial de novo without a jury."[6] After trial, the county court also ruled in Tune's favor, and instructed DPS to issue him a license. DPS thereafter appealed to the court of appeals.

The court of appeals reversed the county court's decision and held that Tune was not eligible for a concealed-handgun license.[7] That court held that it had jurisdiction over the appeal because "there are no restrictions or regulations on the D.P.S.'s appeal from the county court at law...."[8] Thereafter, Tune petitioned for our review. He challenges both the court of appeals' conclusion on jurisdiction and its ruling on the merits that he is not entitled to a concealed-handgun license.

## II. Jurisdiction in the Court of Appeals

■ We first consider Tune's jurisdictional challenge. This Court has jurisdiction to consider whether the court of appeals properly exercised jurisdiction over an appeal.[9] Article V, section 6 of the Texas Constitution establishes that the courts of appeals have general jurisdiction over all cases "of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law."[10] In addition, the Texas Constitution vests courts of appeals with "such other jurisdiction, original and appellate, as may be prescribed by law."[11] Thus, the court of appeals' jurisdiction over this case must be based on either (1) the general constitutional grant, subject to any restrictions or regulations imposed by the Legislature; or (2) a specific statutory grant of jurisdiction.

■ We look first to the Handgun Act itself, to see whether it contains a specific grant of jurisdiction to the courts of appeals. It doesn't. Although the Act expressly authorizes appeals to the county courts at law, it says nothing about subsequent appeals.[12]

■ Consequently, we consider whether the court of appeals had jurisdiction under the general constitutional grant. Because the county court's jurisdiction here was appellate, the constitution vests jurisdiction in the court of appeals, subject to any restrictions and regulations prescribed by law. In two statutes, the Legislature has limited the jurisdiction of the courts of appeals to causes in which the amount in controversy or the judgment exceeds $100.[13] These statutes provide a "restriction or regulation" on the courts of appeals' general jurisdiction. Thus, the court of appeals erred when it concluded that there were no such restrictions or regulations on DPS's ability to bring its appeal.[14]

■ But that conclusion does not end our inquiry. If the amount in controversy here exceeds the jurisdictional minimum of $100, the court of appeals correctly exercised its jurisdiction, albeit for the wrong reason. It has long been the law that the phrase "amount in controversy," in the jurisdictional context, means "the sum of money *or the value of the thing* originally sued for...."[15] While the amount in controversy is frequently determined by the

6. *See id.* § 411.180(e).

7. 977 S.W.2d 650, 653.

8. *Id.* at 652.

9. *See Del Valle Indep. Sch. Dist. v. Lopez,* 845 S.W.2d 808, 809 (Tex.1992).

10. Tex. Const. art. V, § 6.

11. *Id.*

12. *See* Tex. Gov't Code § 411.180(e).

13. *See* Tex. Gov't Code § 22.220(a); Tex. Civ. Prac. & Rem.Code § 51.012.

14. *See* 977 S.W.2d at 652.

15. *Gulf, C. & S.F.Ry. Co. v. Cunnigan,* 95 Tex. 439, 67 S.W. 888, 890 (1902) (emphasis added).

damages sought, that is not always so.[16] The subjective value of a privilege, if asserted in good faith, establishes jurisdiction if that value meets the requisite amount in controversy.[17] Certainly, the amount of money that a state's citizens are willing to pay for a privilege is some evidence of its value. Based on these principles, we hold that the $140 licensing fee establishes the minimum value of a concealed-handgun license. Therefore, the court of appeals correctly concluded that it had jurisdiction over DPS's appeal in this case.

Because the fee for a concealed-handgun license exceeds the $100 jurisdictional amount, there is no need to evaluate whether the license has any additional value particular to Tune. While the licensing fee may not capture the license's entire worth, it establishes a minimum value, which in this case passes the jurisdictional threshold.

■ It is true that Tune himself paid $70 for a two-year license, rather than $140 for a four-year license. We also note that the Act permits certain classes of applicants to pay a reduced fee.[18] Some might therefore argue that, when an applicant like Tune pays a reduced fee, the value of the license isn't enough to satisfy the jurisdictional requirement. We hold, however, that the general application fee of $140 satisfies the amount in controversy requirement in every case, regardless of whether the particular applicant paid that fee or a reduced fee.

Relying on the general application fee in every case establishes a consistent rule and keeps courts from having to inquire into the particularized value a concealed-handgun license has for each applicant.

This approach promotes judicial economy because it provides an easy test for the courts of appeals to apply in determining the minimum amount in controversy in these cases. And we can see no principled reason why an appeal should be allowed if an applicant pays $140, but denied for the same license if the applicant is like Tune and pays only $70 at DPS's discretion for DPS's administrative convenience, or is indigent and pays only $70, or is a senior citizen who pays only $70, or is a retired peace officer who pays only $25.[19] There is no evidence that the Legislature intended to create different classes of concealed-handgun licenses and confer on licensees different rights and duties. From our review of the statute, a person who receives a concealed-handgun license for $25 is subject to all of the same duties and obligations as a person who receives a license for $140. We see no basis for concluding that the Legislature intended that such a person would not also be entitled to all of the same rights, including the right to appeal beyond the county court. It is not that the amount of the particular fee paid by each applicant is somehow in controversy. It is, rather, that the standard fee offers the minimum measure of "the value of the thing originally sued for...."[20]

Based on our holding today, we disapprove the contrary holding in *Texas Department of Public Safety v. Levinson.*[21]

## III. Tune's Eligibility for a Concealed–Handgun License

We now examine whether the court of appeals correctly determined that Tune is not eligible for a concealed-handgun li-

16. *See Brannon v. Pacific Employers Ins. Co.,* 148 Tex. 289, 224 S.W.2d 466, 468–69 (1949); *see also Guerra v. Weatherly,* 291 S.W.2d 493, 495 (Tex.Civ.App.-Waco 1956, no writ).

17. *See Long v. Fox,* 625 S.W.2d 376, 378 (Tex.App.—San Antonio 1981, writ ref'd. n.r.e.).

18. *See, e.g.,* Tex. Gov't Code §§ 411.194(a), 411.195, 411.199(d).

19. *See id.*

20. *Cunnigan,* 67 S.W. at 890.

21. 981 S.W.2d 5 (Tex.App.-San Antonio 1998, pet. dism'd by agr.).

cense. We have jurisdiction to do so because the case requires us to construe the Concealed Handgun Act.[22]

■ Tune contends that the court of appeals erred in concluding that he is "convicted" within the meaning of the Handgun Act. When Tune applied for a license, the Act defined "convicted" as:

an adjudication of guilt or an order of deferred adjudication entered against a person by a court of competent jurisdiction whether or not:

(A) the imposition of the sentence is subsequently probated and the person is discharged from community supervision; or

(B) the person is pardoned for the offense, unless the pardon is expressly granted for subsequent proof of innocence.[23]

A person is not eligible for a license to carry a concealed handgun if he has been convicted of a felony.[24]

Tune argues that because his conviction was set aside and the indictment against him dismissed, he is no longer "convicted" for Handgun Act purposes, and is therefore eligible for a concealed-handgun license. He points to article 42.12 of the Texas Code of Criminal Procedure, which, when his conviction was set aside, required the district court to discharge a defendant who had successfully completed probation.[25] That provision further stated:

In case the defendant has been convicted or has entered a plea of guilty or a plea of nolo contendere, and the court has discharged the defendant hereunder, such court may set aside the verdict or

permit the defendant to withdraw his plea, and shall dismiss the accusation, complaint, information or indictment against such defendant, *who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he been convicted or to which he has pleaded guilty* except that proof of his said conviction or plea of guilty shall be made known to the court should the defendant again be convicted of any criminal offense.[26]

Relying on the italicized language in this provision, Tune maintains that he is no longer disqualified from obtaining a concealed-handgun license.

■ To determine whether Tune is in fact eligible for a license, we look to the Handgun Act's relevant provisions. We must enforce the plain meaning of an unambiguous statute.[27] If a statute is clear and unambiguous, we need not resort to rules of construction or other extrinsic aid to construe it.[28] Because the Handgun Act's definition of "convicted" is clear and unambiguous, we follow its plain meaning.

The Act considers a person "convicted" after an adjudication of guilt is entered against him *whether or not* his sentence is subsequently probated and he is discharged from community supervision.[29] On its face, this language covers Tune. That is: (1) he was adjudicated guilty of a felony by a court of competent jurisdiction; and (2) it doesn't matter that his sentence was subsequently probated and he was discharged from community supervision. The Legislature's use of the phrase "whether or not" between these two conditions demonstrates its choice that a "con-

22. *See* TEX. GOV'T CODE §§ 22.001(a)(3) and 22.225(b)(1).

23. *See* TEX. GOV'T CODE former § 411.171(4), amended by Acts 1999, 76th Leg., ch. 62, §§ 9.01(a), 9.02(a).

24. *See id.* § 411.172(a)(3).

25. *See* TEX.CODE CRIM. PROC. art. 42.12, § 7 (repealed and subsequently recodified at TEX. CODE CRIM. PROC. art. 42.12, § 20).

26. *Id.* (emphasis added).

27. *See St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 505 (Tex.1997).

28. *See id.*

29. *See* TEX. GOV'T CODE § 411.171(4).

viction" under the first condition (adjudication of guilt) does not vanish for purposes of the Act when the second condition (completion of probation and discharge from community supervision) occurs. Nothing in the statute suggests any exception for those who successfully complete probation and are discharged and who have the indictment dismissed. Thus, the court of appeals correctly held that Tune is not eligible for a concealed-handgun license.

The language Tune cites from article 42.12 of the Code of Criminal Procedure doesn't alter this result. The statutory definition of "convicted" we examine today applies only to the Concealed Handgun Act.[30] We can see no reason why the Legislature could not provide in article 42.12 that any general penalties and disabilities resulting from a conviction are lifted when a person is discharged from community supervision and the indictment is dismissed, and yet retain certain specific restrictions on those who have previously been convicted of felonies. If the Handgun Act didn't include a specific definition of the term "convicted," then the inability to obtain a concealed-handgun license might be one of the penalties and disabilities removed when the district court dismissed Tune's indictment. But the Act does include a specific definition. And for obvious reasons, the Legislature may wish to keep concealed handguns out of the hands of persons who have been convicted of a felony, even if those persons satisfactorily complete community supervision.

■ Tune also complains that the court of appeals erred by failing to consider whether there was any evidence that he had been convicted of a felony. He argues that DPS failed to prove that he was the same person as the Warren Lee Tune who pled guilty in 1972 and thereafter had his conviction set aside and the indictment dismissed. Not only did Tune waive this argument by failing to raise it in the trial court, he foreclosed it by submitting an affidavit to the trial court in which he admitted that in 1972 he was placed on a two-year probation for an alleged theft, and that after he had completed one year and five months of probation, the district court shortened the probation period, dismissed the indictment, and discharged him. Accordingly, we find this complaint without merit.

## IV. Conclusion

Because the amount in controversy in this case exceeds the jurisdictional minimum of $100, we conclude that the court of appeals correctly determined that it had jurisdiction to hear DPS's appeal from the county court's decision granting Tune a license to carry a concealed handgun. Because under the plain language of the Concealed Handgun Act Tune is not eligible for a concealed-handgun license, we affirm the judgment of the court of appeals.

Justice HECHT filed a concurring opinion.

Justice ABBOTT filed a dissenting opinion, in which Justice BAKER, Justice HANKINSON, and Justice O'NEILL joined.

Justice HECHT, concurring.

I join the Court's opinion and write merely to clarify three points.

First: the issue regarding the court of appeals' jurisdiction results from a 1985 statutory recodification that has largely been overlooked.

The 1891 amendments to the Texas Constitution created the courts of civil appeals sitting in districts and gave them

> appellate jurisdiction co-extensive with the limits of their respective districts, which shall extend to all civil cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and reg-

---

30. *See id.*

ulations as may be prescribed by law.... [1]

Enabling legislation passed the next year provided in relevant part:

The appellate jurisdiction of the courts of civil appeals shall extend to civil cases within the limits of their respective districts:

(1) Of which the district court has original or appellate jurisdiction.

(2) Of which the county court has original jurisdiction.

(3) Of which the county court has appellate jurisdiction when the judgment or amount in controversy shall exceed one hundred dollars exclusive of interest and costs.[2]

This provision was codified in the 1925 Texas Revised Civil Statutes both as article 1819 [3] and as article 2249.[4]

In 1929, article 1819 was amended as follows to apply the $100 limitation to all cases:

The appellate jurisdiction of the Courts of Civil Appeals shall extend to all civil cases within the limits of their respective districts of which the District Courts and County Courts have or assume jurisdiction when the amount in controversy or the judgment rendered shall exceed One Hundred Dollars exclusive of interest and costs.[5]

However, no corresponding amendment was ever made to article 2249.[6] In 1936, the court of civil appeals held in *Stavely v. Stavely* that article 1819 did not limit the jurisdiction conferred by article 2249, and thus the $100 limitation did not apply in all cases.[7] But in 1942, this Court observed in dicta in *Harbison v. McMurray* that the two statutes "must be read in conjunction" and that article 1819 "has effect to restrict the appellate jurisdiction of the Courts of Civil Appeals in certain civil cases." [8] While we did not discuss the $100 limitation in article 1819, we did conclude that the court of civil appeals had jurisdiction over a habeas corpus appeal brought by a witness who had been held in contempt, fined $100, and jailed. No other court appears to have addressed the conflict in the two statutes.

In 1981, when the courts of civil appeals were changed to courts of appeals, article

1. Tex. S.J. Res. 16, 22d Leg., R.S., 1891 Tex. Gen. Laws 197, 198–199.

2. Act approved Apr.13, 1892, 22d Leg., 1st C.S., ch. 15, § 5, 1892 Tex. Gen. Laws 25, 26.

3. TEX.REV.CIV. STAT. art. 1819 (1925) ("Jurisdiction defined.—The appellate jurisdiction of the Courts of Civil Appeals shall extend to civil cases within the limits of their respective districts:

1. Of which the district courts have original or appellate jurisdiction.
2. Of which the county court has original jurisdiction, or of which the county court has appellate jurisdiction when the amount in controversy or the judgment rendered shall exceed one hundred dollars, exclusive of interest and costs.").

4. TEX.REV.CIV. STAT. art. 2249 (1925) ("To Court of Civil Appeals.—An appeal may be taken to the Court of Civil Appeals from every final judgment of the district court in civil cases, and from every final judgment in the county court in civil cases of which the county court has original jurisdiction, and from every final judgment of the county court in civil cases in which the court has appellate jurisdiction, where the judgment or amount in controversy exceeds one hundred dollars exclusive of interest and costs.").

5. Act approved Mar. 2, 1929, 41st Leg., R.S., ch. 33, § 1, 1929 Tex. Gen. Laws 68.

6. A technical amendment to article 2249 in 1927 inserted after the words "An appeal" the words "or Writ of Error", which had been inadvertently omitted in the 1925 codification. Act approved Feb. 21, 1927, 40th Leg., R.S., ch. 52, § 1, 1927 Tex. Gen. Laws 75.

7. 94 S.W.2d 545, 548 (Tex.Civ.App.—Eastland 1936, writ dism'd).

8. 138 Tex. 192, 158 S.W.2d 284, 287 (1942).

1819 [9] and article 2249 [10] were re-enacted without substantive change. In 1985 both statutes were recodified. Article 1819 became section 51.012 of the Texas Civil Practice and Remedies Code, which states:

> In a civil case in which the judgment or amount in controversy exceeds $100, exclusive of interest and costs, a person may take an appeal or writ of error to the court of appeals from a final judgment of the district or county court.[11]

Article 2249 became section 22.220(a) of the Texas Government Code, which states in part:

> Each court of appeals has appellate jurisdiction of all civil cases within its district of which the district courts or county courts have jurisdiction when the amount in controversy or the judgment rendered exceeds $100, exclusive of interest and costs.[12]

Although the Legislature intended the recodification of article 2249 to be without substantive change,[13] the extension of the $100 limitation to all cases was plainly substantive and must be treated as such.[14] Thus, after 1985 the court of appeals' jurisdiction must be limited to cases in which the judgment or amount in controversy exceeds $100, exclusive of interest and costs, as the Court holds, although those courts' jurisdiction had never been held to be so limited before.[15] Statements in cases to the contrary are incorrect.[16]

Second: Section 411.174 of the Government Code requires an applicant for a license to carry a concealed handgun to pay a nonrefundable application and license fee of $140, but nothing in the statute explains the basis for the charge. It could be to reimburse the State for its costs in processing an application, or it could be to ensure that applicants are serious about qualifying for a license, or the Legislature may have had some other purpose altogether. Nothing in the statute indicates that the State considers a license to be worth $140, but I agree with the Court that an applicant's willingness to pay the fee indicates that he or she thinks the license is worth at least that much. I would not say for licenses in general, however, that any fee charged is much evidence of its value to the applicant. The fee for a driver's license is $24,[17] but surely its value is far greater than that to most drivers. It seems to me harder to put a value on a license to carry a concealed handgun than to put a value on a driver's license, but the fact that a great many people are not only willing but anxious to pay the $140 fee shows that the license is worth more than that to them.

9. Act of June 1, 1981, 67th Leg., R.S., ch. 291, § 38, 1981 Tex. Gen. Laws 761, 780 ("The appellate jurisdiction of the Courts of Appeals shall extend to all civil cases within the limits of their respective districts of which the District Courts and County Courts have or assume jurisdiction when the amount in controversy or the judgment rendered shall exceed One Hundred Dollars ($100) exclusive of interest and costs....").

10. Act of June 1, 1981, 67th Leg., R.S., ch. 291, § 55, 1981 Tex. Gen. Laws 761, 785 ("An appeal or Writ of Error may be taken to the Court of Appeals from every final judgment of the district court in civil cases, and from every final judgment in the county court in civil cases of which the county court has original jurisdiction, and from every final judgment of the county court in civil cases in which the court has appellate jurisdiction, where the judgment or amount in controversy exceeds one hundred dollars exclusive of interest and costs.").

11. Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3280.

12. Act of May 17, 1985, 69th Leg., R.S., ch. 480, § 1, 1985 Tex. Gen. Laws 1720, 1730.

13. TEX. GOV'T CODE § 1.001(a).

14. Fleming Foods of Texas, Inc. v. Rylander, 6 S.W.3d 278, 286 (Tex.1999).

15. See Texas Dep't of Pub. Safety v. Barlow, 992 S.W.2d 732, 739 (Tex.App.—Waco 1999, pet. filed).

16. In re S.G., Jr., 935 S.W.2d 919, 923 n. 3 (Tex.App.—San Antonio 1996, writ dism'd w.o.j.); Texas Dep't of Pub. Safety v. Levinson, 981 S.W.2d 5, 7 (Tex.App.—San Antonio 1998, pet. dism'd by agr.).

17. TEX. TRANSP. CODE § 521.421(a).

Third: For me there is another consideration, which is that the State's principal interest in this case is not to obtain revenue but to assure that only persons qualified by statute be permitted to carry a concealed handgun. That interest is worth more than $100.

Justice ABBOTT, joined by Justice BAKER, Justice HANKINSON, and Justice O'NEILL, dissenting.

I would hold that when a person who paid a nonrefundable application fee challenges the denial of a concealed-handgun license, there is no amount in controversy, and therefore the court of appeals lacked jurisdiction over this case. Accordingly, I dissent.

A license-denial case, like this one, is not an ordinary lawsuit in which a party files suit in court pleading damages or seeking the recovery of any amount. Rather, the Legislature has set up a unique system for the review of administrative handgun-license decisions. Under that system, the applicant first applies to DPS for the license. *See* TEX. GOV'T CODE § 411.174. If DPS denies the application, the applicant may request a hearing. *See id.* § 411.180(a). On receipt of the applicant's request for a hearing, DPS, not the applicant, files a petition in the appropriate justice court. *See id.* § 411.180(b). The justice of the peace then determines whether DPS's denial of the application is supported by a preponderance of the evidence. *See id.* § 411.180(c). The applicant does not seek—and the justice court cannot award—the recovery of any damages or any other monetary relief. *See id.* (providing that, if the agency's denial is not supported by a preponderance of the evidence, the court shall order DPS to immediately issue the license to the applicant). Rather, the justice of the peace merely acts as an administrative officer in affirming or reversing the agency's decision to deny the license. *See id.* § 411.180(a) ("In a proceeding under this section, a justice of the peace shall act as an administrative hearing officer."). Thus, the amount of the fee is not "in controversy." The Court creates a fiction when it concludes that the $140 application fee is

an amount in controversy or is an amount "originally sued for." 23 S.W.3d at 361. Tune sought no monetary relief, nor could he. There simply is no amount in controversy in this case.

Nonetheless, even if the application fee constituted an amount in controversy, I would hold that the $100 amount-in-controversy requirement has not been satisfied. Tune paid a $70 application fee, not a $140 application fee. The Court attempts to avoid this fact by likening Tune's prorated two-year license to a reduced-fee four-year license: "[W]e can see no principled reason why an appeal should be allowed if an applicant pays $140, but denied for *the same license* if the applicant is like Tune and pays only $70 at DPS's discretion for DPS's administrative convenience, or is indigent and pays only $70, or is a senior citizen who pays only $70, or is a retired peace officer who pays only $25." *Id.* at 362 (emphasis added).

But unlike a reduced-fee four-year license, a prorated two-year license is not *the same license* as a four-year license. A person who receives a reduced-fee four-year license and a person who receives a license for $140 are both "subject to all of the same duties and obligations" for the same four-year period. *Id.* at 362. But a person, like Tune, who receives a two-year prorated license is subject to those duties and obligations for only half as long. The Court bases its holding on the theory that "the amount of money that a state's citizens are willing to pay for a privilege is some evidence of its value." *Id.* at 362. While there may be some evidence that Texas citizens are willing to pay $140 for a four-year concealed-handgun license, there is no evidence that those citizens would pay $140 for a two-year license. Thus, even under the Court's amount-in-controversy analysis, the court of appeals lacked jurisdiction over Tune's case.

Perhaps even more troubling is the possibility that the Court's opinion may vastly

broaden courts of appeals' jurisdiction to cases that the Legislature did not intend to be appealable to the courts of appeals. Under the Court's holding that a license fee is some evidence of the amount in controversy, the courts of appeals gain jurisdiction over all license and permit disputes in which the related fees exceed $100. By my last count, this includes more than 350 licenses and permits issued by the State of Texas. *See, e.g.,* TEX. ALCO. BEV.CODE § 51.05 (setting fee for original minibar permit at $2000); TEX. PARKS & WILD.CODE § 45.003 (requiring a minimum $100 fee for a class–1 commercial game bird breeding license); *id.* § 47.010 (requiring a minimum $250 fee for a wholesale truck dealer's fish license). Surely the Legislature did not intend for jurisdiction in the courts of appeals—which is mandatory, not discretionary—to arise from the denial or revocation of all these licenses and permits. But that is the result of today's holding.

I believe that the Court's conclusion is contrary to the Legislature's intent. The Legislature has seemingly recognized—if not intended—that many license-denial or license-suspension cases do not satisfy the amount-in-controversy requirement that triggers appellate review. Instead, the Legislature has established a framework governing the review of many licensing and administrative decisions. For instance, the Legislature has made many licensing statutes expressly subject to the Administrative Procedure Act (APA), which potentially provides limited appellate review. *See, e.g.,* TEX. OCC.CODE § 1703.352 (providing that a proceeding for the refusal, suspension, or revocation of a license to administer polygraph exams is governed by the APA). Also, under section 2001.054 of the APA, some license decisions are subject to contested case hearings and any appellate review provided by the APA. *See* TEX. GOV'T CODE § 2001.054 ("The provisions of this chapter concerning contested cases apply to the grant, denial, or renewal of a license that is required to be preceded by notice and opportunity for hearing."). Notably, whatever appellate review is afforded by the APA is not in-

voked here because the Handgun Act specifically prohibits its application. *See id.* § 411.180(a) ("A hearing under this section is not subject to Chapter 2001 (Administrative Procedure Act).").

In sum, I would reject DPS's arguments that the nonrefundable application fee satisfies the amount-in-controversy requirement. The action establishing original jurisdiction in the justice of the peace court is merely a hearing to determine whether the license denial was supported by a preponderance of the evidence. Thus, I would hold that the court of appeals lacked jurisdiction under the general grant of jurisdiction in Article V, section 6 of the Texas Constitution.