**Opinion issued December 20, 2012**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00931-CV[1]

———————————

**ANGELA MICHELLE HARRIS, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

---

**On Appeal from the 228th District Court**
**Harris County, Texas**
**Trial Court Case No. 8744374**

---

**O P I N I O N**

---

[1] This case was originally docketed in this Court as 01-11-00931-CR. Because of our disposition of this appeal, it has been redocketed as a civil case under this cause number.

This in an appeal from an order denying appellant Angela Michelle Harris's petition for nondisclosure of her prior conviction for possession of cocaine. We reverse and the remand to the trial court for further proceedings.

**BACKGROUND**

Pursuant to a plea agreement related to a cocaine possession charge, on July 18, 2001, Harris was placed on deferred adjudication community supervision for three years. She fulfilled the conditions of her probation, and her community supervision was terminated and she was discharged on July 21, 2003.

On June 17, 2010, Harris was placed on a one-year deferred-adjudication probation for evading arrest. After fulfilling the terms, she was discharged from that probation on June 17, 2011.

On September 28, 2011, Harris filed a petition for a nondisclosure order related to her 2001 cocaine case under TEXAS GOVERNMENT CODE § 411.081(d). The trial court denied her petition, expressing the belief that Harris's deferred adjudication for evading arrest foreclosed the requested relief. The court made findings of fact and conclusions of law, including that Harris "has lost several thousand dollars in potential employment wages as a result of the July 18, 2001 deferred adjudication appearing on her record." The court's findings also stated that "because the subsequent deferred adjudication precludes an order of nondisclosure for the July 18, 2001 deferred adjudication, the Court did not reach

2

or decide whether an order of nondisclosure would be in the best interests of justice."

## JURISDICTION

As a threshold matter, the State argues that this Court lacks jurisdiction over this appeal. It notes that section 411.081 of the Texas Government Code does not expressly provide for an appeal of an order denying a nondisclosure order and that, absent a specific statutory grant of jurisdiction, the legislature has limited the jurisdiction of appellate courts to cases in which the amount in controversy or the judgment exceeds $250. *See* TEX. GOV'T CODE ANN. § 22.220(a) (Vernon Supp. 2011). Because, it asserts, "there is no basis on which to assign a value to the nondisclosure order" that Harris seeks, she cannot satisfy the amount-in-controversy jurisdictional requirement.

In response, Harris argues that "Texas Code of Criminal Procedure Article 44.02 affords Appellant a right to appeal in that this is a criminal case since Appellant was charged with an offense and this proceeding is an effort to limit the release of the criminal records." Alternatively, if this is instead a civil matter, Harris contends that the trial court's finding that she has "lost several thousand dollars in potential employment wages" sufficiently establishes a value of the privilege she seeks to vest this court with jurisdiction over her appeal.

3

A. **Applicable Law**

The Texas Constitution confers the courts of appeals with jurisdiction over "all cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law." TEX. CONST. art. V, § 6(a). The courts of appeals are also constitutionally vested with "such other jurisdiction, original and appellate, as may be prescribed by law." *Id*. Thus, our jurisdiction over an appeal must be based on either (1) the general constitutional grant, subject to any restrictions and regulations imposed by the legislature; or (2) a specific statutory grant of jurisdiction. *See Tex. Dep't of Pub. Safety v. Barlow*, 48 S.W.3d 174, 175–76 (Tex. 2001); *Tune v. Tex. Dep't of Pub. Safety*, 23 S.W.3d 358, 361 (Tex. 2000); *Huth v. State*, 241 S.W.3d 206, 207 (Tex. App.—Amarillo 2007, pet. denied) (op. on reh'g).

Section 411.081 matters are civil, not criminal, so Texas Code of Criminal Procedure Article 44.02's provision providing that a "defendant in any criminal action has the right of appeal" does not confer jurisdiction on this Court over the denial of a petition for a nondisclosure order.[2] Chapter Section 411.081 contains

---

[2] Although Harris argues that we should treat this proceeding as criminal, she cites no authority supporting that proposition, and the cases addressing nondisclosure orders have all treated them as civil. *See, e.g.*, *Bergin v. State*, No. 06-06-00089-CV, 2006 WL 2456302, at *1 (Tex. App.—Texarkana Aug. 25, 2006, no pet.) (mem. op.) ("By providing that petitions for nondisclosure are subject to the same fees generally applicable to civil petitions, the Legislature indicated that it intended petitions for nondisclosure to be treated as civil actions.").

no express grant of an appellate right, in contrast with the statutory provision for expunction of criminal records. *Compare* TEX. GOV'T CODE ANN. § 411.081 (outlining requirements for nondisclosure petition, but no provisions for appeal), *with* TEX. CODE CRIM. PROC. ANN. art. 55.02 § 3(a) (Vernon 2011) ("The person who is the subject of the expunction order or an agency protesting the expunction may appeal the court's decision in the same manner as in other civil areas.").

Absent a specific statutory grant of jurisdiction, we must look to the general constitutional grant. Here, the legislature has limited the jurisdiction of our courts of appeals to cases in which the amount in controversy or the judgment exceeds $250, exclusive of interest and costs. See TEX. GOV'T CODE ANN. § 22.220(a) (Vernon 2011).

For this purpose, the "amount in controversy" means the sum of money or the value of the thing for which the suit was brought. *Tune*, 23 S.W.3d at 361. The subjective value of a privilege, if asserted in good faith, establishes jurisdiction if it meets the required amount in controversy. *Id*. at 362. By statute, the amount in controversy cannot include the costs associated with bringing suit. *See* TEX. GOV'T CODE ANN. § 22.220(a) (Vernon 2011); TEX. CIV. PRAC. & REM.CODE ANN. § 51.012 (Vernon 2011).

**B. Analysis**

Whether the courts of appeals have jurisdiction over nondisclosure orders presents an issue of first impression for this Court. Three courts of appeals have exercised jurisdiction over appeals from the denial of nondisclosure orders without addressing jurisdiction in their opinions. *Ramsey v. State*, 249 S.W.3d 568, 574–75 (Tex. App.—Waco 2008, no pet.) (affirming denial of petition for bill of review challenging denial of nondisclosure order); *Fulgham v. State*, 170 S.W.3d 836, 836–37 (Tex. App.—Corpus Christi 2005, no pet.) (reversing trial court's denial of nondisclosure order and remanding for hearing on whether such order was in the best interest of justice); *Carter v. State*, No. 04-07-00854-CV, 2008 WL 4172877, at *1 (Tex. App.—San Antonio Sept. 10, 2008, no pet.) (reversing trial court's denial of nondisclosure order and remanding for hearing because the "trial court erred by not conducting a hearing on the issue of whether nondisclosure served the interest of justice").

The courts of appeals that have addressed the issue of jurisdiction have uniformly held they lack jurisdiction over orders denying petitions for nondisclosure because there is so express statutory authority for such an appeal, and because the records in those cases did not reflect an adequate amount in controversy. *E.g.*, *Huth*, 241 S.W.3d at 208 ("Because section 411.081 does not expressly create a right of appeal and because nothing in the record shows an

6

amount in controversy in the case exceeding [the jurisdictional threshold], exclusive of interests and costs, we are without jurisdiction."); *Guinn v. State*, No. 05-09-01295-CV, 2010 WL 22817, at *1 (Tex. App.—Dallas Jan. 6. 2010, no pet.) ("Section 411.081 of the government code does not specifically provide this Court with jurisdiction over an order denying a petition for non-disclosure . . . [and] nothing in the record reflects any amount in controversy that would provide the Court with general appellate jurisdiction").

Harris contends that her case is distinguishable, however, because the trial court's finding that she "has been denied employment opportunities and has lost several thousand dollars in potential employment wages as a result of the July 18, 2001 deferred adjudication appearing on her record" provides the requisite amount in controversy. The State disagrees, arguing that the trial court's finding only "demonstrates the value of the work appellant possibly would have performed, before she filed the petition, had she not been denied employment presumably due to her 2001 deferred-adjudication probation." According to the State, "an item's value does not derive from the collateral income that may result from its use."

Because no court has analyzed what type of pleadings or evidence would establish the amount in controversy in an appeal from a nondisclosure order, we look to the interpretation that Texas courts have given this jurisdictional requirement in other contexts. The seminal case is *Tune v. Texas Department of*

7

*Public Safety*, a case in which the Texas Supreme Court held that the court of appeals had properly exercised jurisdiction over an appeal related to the issuance of a concealed handgun license. 23 S.W.3d 362. Because there was no statutory grant of appellate authority over decisions related to these licenses, *see generally* TEX. GOV'T CODE ANN. § 411.180(e), the supreme court considered whether the minimum threshold amount in controversy ($100 under the applicable law at the time) could be established despite the lack of a claim for damages. 23 S.W.3d at 361. In doing so, it looked to the four-year license fee as a minimum measure of the subjective value of the license (even though the appellant had actually paid only $70 for a two-year license), explaining:

> It has long been the law that the phrase "amount in controversy," in the jurisdictional context means "the sum of money *or the value of the thing* originally sued for . . ." While the amount in controversy is frequently determined by the damages sought, that is not always so. The subjective value of a privilege, if asserted in good faith, establishes jurisdiction if that value meets the requisite amount in controversy. Certainly, the amount of money that a state's citizens are willing to pay for a privilege is some evidence of its value. Based on these principles, we hold that the $140 licensing fee establishes the minimum value of a concealed-handgun license. Therefore, the court of appeals correctly concluded that it had jurisdiction over DPS's appeal in this case.
>
> Because the fee for a concealed-handgun license exceeds the $100 jurisdictional amount, there is no need to evaluate whether the license has any additional value particular to Tune. While the licensing fee may not capture the license's entire worth, it establishes a minimum value, which in this case passes the jurisdictional threshold.

23 S.W.3d at 361–62 (citations omitted).

8

A year after it decided *Tune*, the supreme court utilized a similar analysis in deciding that the court of appeals had jurisdiction over a dispute involving a drivers license suspension, reasoning that the $24 initial fee for a driver's license and the $100 fee for reinstatement following suspension "indicate a minimum value that a driver such as [respondent] is willing to pay for the privilege of driving":

> The "amount in controversy," in the jurisdictional sense, is not limited to the money damages sought. Rather, "[t]he subjective value of a privilege, if asserted in good faith, establishes jurisdiction if that value meets the requisite amount in controversy." *Tune v. Texas Dep't of Pub. Safety*, 23 S.W.3d 358, 361 (Tex. 2000). In *Tune*, we held that the amount of money that a citizen is willing to pay for a privilege is some evidence of its value. *Id.* at 362. Thus, statutes that require payment for a person to be afforded a particular privilege, such as a licensing fee, may establish a minimum value. *Id.* That is not because the fee is somehow in controversy, but because "the standard fee offers the minimum measure of 'the [privilege's] value.'" *Id.*

*Barlow*, 48 S.W.3d at 176. Because the court was relying upon the license fee as a minimum value, the court further held that the party seeking relief need "not plead or prove a specific amount in controversy." *Id.* Instead, the court explained, "by seeking to retain his driver's license, [the respondent] put the value of his driving privileges at issue." *See id.* Thus "neither party needed to introduce evidence about what [respondent] subjectively thinks his driving privileges are worth because the Transportation Code itself establishes an objective minimum value." *See id.*; *see also Deleon v. State*, 284 S.W.3d 894, 896 (Tex. App.—Dallas 2009,

9

no pet.) (fee charged for occupational license following drivers license suspension satisfies jurisdictional amount in controversy requirement).

Although neither party cites it, we find the Beaumont Court of Appeal's application of *Tune*'s jurisdictional principles in *In re Richards* persuasive and on point here. 202 S.W.3d 779, 789–90 (Tex. App.—Beaumont 2006, pet. denied). In *Richards*, the court confronted the issue of whether it had jurisdiction in an appeal from the denial of a civil petition for habeas relief complaining of certain restrictions, including a restriction prohibiting the petitioner from returning to work upon being released from jail. *Id.* The court reasoned that lost income for at least two months clearly met the jurisdictional requirement, without the amount of lost work and wages being specifically quantified:

> In his application for habeas relief, one of Richards's complaints concerned the refusal of his case manager to allow him to return to his job upon his release from jail on April 7, 2005. Richards's sworn complaint indicates that his parole officer had approved his return to his place of employment. Attached to Richards's habeas application is a letter from his employer stating that "I hope that James will be available all work hours that we are open. . . ." Richards filed his application for habeas relief on June 6, 2005. Thus, it is clear from Richards's application that at the time he filed his application, one of his complaints concerned a restriction that prohibited his earning income for at least two months prior to the filing of his writ application. Although Richards did not quantify his loss of income at the hearing held in October 2005, a good faith estimate of the amount in controversy for the value of the lost opportunity to work for two months well exceeds the one hundred dollar jurisdictional amount. While Richards also complains of other restrictions in addition to the one on his ability to work, we need not further evaluate the value of Richards's other privileges because the restriction that prohibited his

10

ability to work for two months satisfies the amount in controversy requirement.

*Id.*

We similarly conclude here that the trial court's finding that Harris has been denied employment and lost thousands of dollars in wages as a result of the 2001 deferred adjudication appearing on her record demonstrates that the subjective value of the nondisclosure order she seeks exceeds the jurisdictional threshold of $250. We thus conclude that we have jurisdiction over Harris's appeal of the trial court's denial of her petition for nondisclosure of the 2001 deferred adjudication.

## NONDISCLOSURE ORDER

Harris argues that the trial court erred by concluding that her 2010 deferred adjudication for evading arrest precluded the court from granting her petition for nondisclosure of her 2001 deferred adjudication. According to Harris, because her second deferred adjudication period began more than five years after she was discharged from her 2001 probation, the second probation does not render her ineligible for a nondisclosure order related to the first offense under section 411.081. We agree.

### A. Applicable Law

The relevant portions of section 411.081 provide:

(d) Notwithstanding any other provision of this subchapter, if a person is placed on deferred adjudication community supervision under Section 5, Article 42.12, Code of Criminal Procedure, subsequently

11

receives a discharge and dismissal under Section 5(c), Article 42.12, and satisfies the requirements of Subsection (e), the person may petition the court that placed the defendant on deferred adjudication for an order of nondisclosure under this subsection. Except as provided by Subsection (e), a person may petition the court under this subsection regardless of whether the person has been previously placed on deferred adjudication community supervision for another offense. . . . A person may petition the court that placed the person on deferred adjudication for an order of nondisclosure on payment of a $28 fee to the clerk of the court in addition to any other fee that generally applies to the filing of a civil petition. The payment may be made only on or after:

(1) the discharge and dismissal, if the offense for which the person was placed on deferred adjudication was a misdemeanor other than a misdemeanor described by Subdivision (2);

(2) the second anniversary of the discharge and dismissal, if the offense for which the person was placed on deferred adjudication was a misdemeanor under Chapter 20, 21, 22, 25, 42, or 46, Penal Code; or

(3) the fifth anniversary of the discharge and dismissal, if the offense for which the person was placed on deferred adjudication was a felony.

(e) A person is entitled to petition the court under Subsection (d) only if during the period of the deferred adjudication community supervision for which the order of nondisclosure is requested and during the applicable period described by Subsection (d)(1), (2), or (3), as appropriate, the person is not convicted of or placed on deferred adjudication community supervision under Section 5, Article 42.12, Code of Criminal Procedure, for any offense other than an offense under the Transportation Code punishable by fine only. . . .

TEX. GOV'T CODE § 411.081(d),(e).

**B. Analysis**

Harris and the State advance two different interpretations of the interplay between subsections (d) and (e) of section 411.081. As the trial court recognized, this issue has not been addressed by the appellate courts.

According to Harris, so long as five years passed between the discharge of her first probation and the start of her second probation, she qualifies for a nondisclosure order on the earlier deferred adjudication. The State insists instead that the relevant time periods "are defined and measured by when the defendant makes the $28 payment," and that "since appellant obtained her second deferred-adjudication probation during the period preceding her payment of $28, she was not eligible for a nondisclosure order."

A plain reading of section 411.081 demonstrates that Harris's second deferred adjudication in 2010 does not disqualify her from obtaining a nondisclosure order on her 2001 deferred adjudication. The relevant portion of Subsection (d) states that "if a person is placed on deferred adjudication community supervision . . . , subsequently receives a discharge and dismissal . . . , and satisfies the requirements of Subsection (e), the person may petition the court that placed the defendant on deferred adjudication for an order of nondisclosure under this subsection." TEX. GOV'T CODE § 411.081(d). The same subsection specifically provides that, "Except as provided by Subsection (e), a person may

13

petition the court under this subsection regardless of whether the person has been previously placed on deferred adjudication community supervision for another offense." *Id*. Harris was placed on deferred adjudication community supervision in 2001, and was subsequently discharged and dismissed in 2003. Her eligibility for a nondisclosure order then turns on whether she satisfies the requirements of subsection (e).

In relevant part, Subsection (e) provides that "a person is entitled to petition the court under Subsection (d) only if during the period of the deferred adjudication community supervision for which the order of nondisclosure is requested and during the applicable period described by Subsection (d)(1), (2), or (3), as appropriate, the person is not convicted of or placed on deferred adjudication community supervision . . ." *Id*. at § 411.081(e). Subsection (d)(1), (2) and (3) state:

> . . . . A person may petition the court that placed the person on deferred adjudication for an order of nondisclosure on payment of a $28 fee to the clerk . . . . The payment may be made only on or after:
>
> (1) the discharge and dismissal, if the offense for which the person was placed on deferred adjudication was a misdemeanor other than a misdemeanor described by Subdivision (2);
>
> (2) the second anniversary of the discharge and dismissal, if the offense for which the person was placed on deferred adjudication was a misdemeanor under Chapter 20, 21, 22, 25, 42, or 46, Penal Code; or

14

(3)    the fifth anniversary of the discharge and dismissal, if the offense for which the person was placed on deferred adjudication was a felony.

The parties here agree that subsection (d)(3) is the provision relevant to Harris.

Read together, subsections (d), (d)(3), and (e) provide that Harris may only petition for a nondisclosure order on her 2001 deferred adjudication if:

(1)    At least five years have passed since the discharge and dismissal on the offense for which the nondisclosure order is sought (i.e., she cannot petition before July 21, 2008), § 411.081(d) &(d)(3); and

(2)    she was not again convicted or placed on deferred adjudication for another offense during either:

(a)    the probationary period of the offense for which the nondisclosure order is sought (i.e., July 18, 2001–July 21, 2003), § 411.081(e), or

(b)    before the fifth anniversary of the discharge and dismissal on the offense for which the nondisclosure order is sought (i.e., before July 21, 2008), § 411.081(e), (d)(3).

Here, at least five years passed after the conclusion of the probationary period on Harris's 2001 deferred adjudication before she petitioned for an order of nondisclosure, and her second deferred adjudication was on June 17, 2010, which is outside the five-year window.  The trial court's conclusion that Harris's "June 17, 2010 deferred adjudication for evading arrest precludes the issuance of an order for nondisclosure for the July 18, 2001 deferred adjudication" was thus incorrect.

The State disagrees because, it asserts:

15

[T]he relevant time period for which a defendant must avoid a second deferred-adjudication probation is not simply five years from the date of the defendant's discharge from her first probation. Rather, the period described in subsection (d)(3) is defined and measured by when the defendant makes the $28 payment. Since appellant was placed on a second deferred-adjudication probation before she made the payment, the trial judge properly denied her petition for a nondisclosure order.

This argument, however, is simply not supported by the text of the statute. Subsection (e) provides that a defendant cannot be convicted or placed on deferred adjudication "during the applicable time period described by Subsection (d)[](3)." TEX. GOV'T CODE §411.081(e). Subsection (d)(3) states a "payment may be made only on or after . . . the fifth anniversary of the discharge and dismissal." *Id.* §411.081(d)(3). Contrary to the State's argument, nothing in either section requires the fee for a nondisclosure order to be paid *before* the defendant is placed on a second deferred adjudication probation.

We sustain Harris's sole issue.

**BEST INTEREST OF JUSTICE**

Section 411.081(d) contemplates "a hearing on whether the person is entitled to file the petition and issuance of the order is in the best interest of justice." The trial court's findings of fact and conclusions of law in this case state that "[b]ecause the subsequent deferred adjudication precludes an order of nondisclosure for the July 18, 2001 deferred adjudication, the Court did not reach or decide whether an order of nondisclosure would be in the best interests of

16

justice." The State nonetheless requests that we affirm the denial of Harris's petition for nondisclosure because "[c]onsidering that appellant committed a subsequent crime, thereby demonstrating a lack of rehabilitation, justice would not be served by allowing appellant to prevent the disclosure of her criminal record." The State acknowledges that the trial court expressly declined to reach this issue, but argues that "the judge's ruling may be upheld under the 'best interest of justice' theory despite the judge basing his ruling on another reason" because a trial court's ruling should be upheld if it is correct under any theory of the law applicable to the case. *State v. Vasquez*, 230 S.W.3d 744, 747 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

We decline to address a ground for upholding the trial court's order that the trial court expressly declined to reach. Instead, we remand to the trial court to consider that issue in the first instance.

## CONCLUSION

We reverse and remand.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

17