# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-20-00383-CV

---

**Texas Department of Public Safety, Appellant**

**v.**

**Linda K. Gibson, Appellee**

---

### FROM THE COUNTY COURT AT LAW NO. 2 OF HAYS COUNTY
### NO. 20-0065-C, THE HONORABLE CHRIS JOHNSON, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

This is a dispute over the issuance of a license under the Concealed Handgun Act. *See generally* Tex. Gov't Code §§ 411.171–.209. The Texas Department of Public Safety appeals from the county court at law's judgment that Laura Gibson is entitled to renew her handgun license. We will dismiss for want of subject matter jurisdiction.

### BACKGROUND

The Act requires the Department to issue a license to any eligible person who submits all the required application materials. *See id.* § 411.177(a) ("The [D]epartment shall issue a license to carry a handgun to an applicant if the applicant meets all the eligibility requirements and submits all the application materials."); *see also id.* §§ 411.172(a) (enumerating eligibility requirements), .174 (specifying contents of application). Gibson applied for a license in late 2014 and paid a nonrefundable $140 application and license fee. *See* Act of

May 8, 1997, 75th Leg., R.S., ch. 165, § 10.01, 1997 Tex. Gen. Laws 327, 399 (amended 2017) (current version at Tex. Gov't Code 411.174(a)(6)).  The Department issued the license in March of 2015.

Four years later, Gibson applied to renew her license and paid a nonrefundable $40 renewal fee.  *See* Tex. Gov't Code § 411.185(a)(2).  The Department denied her application because she was ineligible due to a pending Class B misdemeanor charge for driving while intoxicated.  *See id.* §§ 411.172(a)(4) (providing that "[a] person is eligible for a license to carry a handgun if the person . . . is not charged with the commission of a Class A or Class B misdemeanor or equivalent offense"), .185(e) (instructing Department to renew license if license holder meets all eligibility requirements).  A justice court overturned the denial.  *See id.* § 411.180(a), (c).  The Department appealed to the county court at law for a trial de novo.  *See id.* § 411.180(e).  The county court at law (which we now refer to as the trial court) reversed the denial after an evidentiary hearing.  The Department timely filed notice of appeal.

## JURISDICTION

We begin by determining whether we have jurisdiction to decide this appeal. Although neither party questioned jurisdiction, "we must consider issues affecting our jurisdiction sua sponte."[1]  *State ex rel. Best v. Harper*, 562 S.W.3d 1, 7 (Tex. 2018).  Whether a court has jurisdiction is a question of law that we consider de novo.  *City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444, 451 (Tex. 2020).

---

[1]  We requested that both parties submit additional briefing addressing our jurisdiction. The Department submitted its response and its brief on the merits on September 3, 2020.  Gibson did not file a response or a merits brief.

The Texas Constitution establishes that the courts of appeals have general jurisdiction over "all cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law." Tex. Const. art. V, § 6(a). In addition, the Constitution vests the courts of appeals with "such other jurisdiction, original and appellate, as may be prescribed by law." *Id.* Thus, our jurisdiction over this appeal must be based on either: (1) the general constitutional grant, subject to any restrictions or regulations imposed by the legislature, or (2) a specific statutory grant of jurisdiction. *See Texas Dep't of Pub. Safety v. Barlow*, 48 S.W.3d 174, 175–76 (Tex. 2001); *Harris v. State*, 402 S.W.3d 758, 760 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

The Act contains no express grant of appellate jurisdiction. *See Tune v. Texas Dep't of Pub. Safety*, 23 S.W.3d 358, 361 (Tex. 2000) ("We look first to the Handgun Act itself, to see whether it contains a specific grant of jurisdiction to the courts of appeals. It doesn't." (citing Tex. Gov't Code § 411.180(e))).[2] Absent a specific authorization to appeal, we must look to the general grant. The legislature has restricted the jurisdiction of courts of appeals to cases where the amount in controversy exceeds $250, exclusive of interests and costs. Tex. Gov't Code § 22.220(a).[3] The "amount in controversy," in the jurisdictional sense, is not limited to the

---

[2] More specifically, the supreme court explained that although Section 411.180 of the Act "expressly authorizes appeals to the county courts at law, it says nothing about subsequent appeals." *Tune v. Texas Dep't of Pub. Safety*, 23 S.W.3d 358, 361 (Tex. 2000). Section 411.180(e) has not been amended since the supreme court decided *Tune*. *See* Tex. Gov't Code § 411.180(e) ("A party adversely affected by the court's ruling following a hearing under this section may appeal the ruling by filing within 30 days after the ruling a petition in a county court at law in the county in which the applicant or license holder resides or, if there is no county court at law in the county, in the county court of the county.").

[3] A statute in the Civil Practice and Remedies Code contains an identical restriction. *See* Tex. Civ. Prac. & Rem. Code § 51.012 ("In a civil case in which the judgment or amount in controversy exceeds $250, exclusive of interest and costs, a person may take an appeal or writ of

3

amount of money damages sought. *Barlow*, 48 S.W.3d at 176. Rather, "[t]he subjective value of a privilege, if asserted in good faith, establishes jurisdiction if that value meets the requisite amount in controversy." *Id.* (citing *Tune*, 23 S.W.3d at 361). The supreme court has held that "the amount of money that a state's citizens are willing to pay for a privilege is some evidence of its value." *Tune*, 23 S.W.3d at 362. "Thus, statutes that require payment for a person to be afforded a particular privilege, such as a licensing fee, may establish a minimum value." *Barlow*, 48 S.W.3d at 176.

The supreme court applied these principles in *Tune*, which involved an appeal by the Department of an order overturning its refusal to issue a handgun license. 23 S.W.3d at 360–362. The version of the Act in effect at the time generally required applicants to pay a nonrefundable $140 licensing and application fee but permitted certain classes of applicants to pay a reduced fee. *Id.* at 360. The supreme court held that the "general application fee of $140" established the minimum value of a handgun license "in every case, regardless of whether the particular applicant paid that fee or a reduced fee." *Id.* at 362. The general application fee satisfied the amount-in-controversy requirement at the time of $100. *Id.* at 361 (citing Act of May 17, 1985, 69th Leg., R.S., ch. 480, sec. 1, 1985 Tex. Gen. Laws 1720, 1730 (amended 2009) (current version at Tex. Gov't Code § 22.220(a))).

Since *Tune* was decided, however, the legislature has increased the jurisdictional minimum to $250. *See* Tex. Gov't Code § 22.220(a). The Department responds that the record shows that Gibson paid more than $250 to acquire and attempt to renew her license and that her willingness to pay these sums is evidence of the license's value to her. *See Tune*, 23 S.W.3d at

---

error to the court of appeals from a final judgment of the district or county court."). To simplify our discussion, we cite only to the Government Code.

4

362 ("The subjective value of a privilege, if asserted in good faith, establishes jurisdiction if that value meets the requisite amount in controversy."). Specifically, the Department asserts that Gibson paid a $140 application and license fee, a $10 fee to record her fingerprints, a $40 application renewal fee, and at least $135 for the handgun proficiency course required by the Act, for a total of $325. *See* Tex. Hum. Res. Code § 80.001(b) (providing that law enforcement agency may not charge fee exceeding $10 to make fingerprint record); Tex. Gov't Code § 411.188 ("Handgun Proficiency Requirement").

We disagree because there is no evidence of how much Gibson paid for the handgun proficiency course. The Act requires almost all applicants to complete a two-part course teaching minimum competence with a handgun. *See* Tex. Gov't Code § 411.188(a). The course—which has a classroom component and a "range instruction" component—is administered by private instructors using materials distributed by the Department. *See id.* Unlike other costs associated with obtaining a handgun license, the Act does not specify how much the instructors may charge for administering the course. *See generally id.* § 411.188. There is no evidence of which provider or providers administered the course to Gibson or how much she paid them. Nevertheless, the Department argues that we can ascertain the minimum value of the course and submitted evidence, derived from internet research, of what two course providers currently charge.[4] Although we have the power to ascertain factual matters outside the record to determine whether we have jurisdiction, *see id.* § 22.220(c), the Department does not allege that Gibson used either provider. Nor has it provided any basis for us to conclude that the

---

[4] The Department argues that the fee schedules reflected on the websites of the two providers show that the classroom component "may cost upwards" of $50 and the range component may cost upwards of $85.

prices charged by these two providers are representative of the prices Gibson would have paid at the time she completed the course prior to obtaining her license in March of 2015.

Absent evidence that the value of the license to Gibson exceeds $250, the Department asks us to consider the value to the State of enforcing the Act's licensing scheme. The concurring opinion in *Tune* observed "that the State's principal interest in this case is . . . to assure that only persons qualified by statute be permitted to carry a concealed handgun. That interest is worth more than $100." 23 S.W.3d at 367 (Hecht, J., concurring). In *Barlow*—a case concerning the amount in controversy in an appeal concerning the suspension of a driver's license following an arrest for driving while intoxicated—a two-justice concurrence observed "that the value of a driver's license and the value of the State's interest in curbing drunk driving—both of which are involved in this appeal—are worth considerably more than $100." 48 S.W.3d at 177 (Hecht, J., concurring, joined by Owen, J.). The Department invites us to apply the concurrences' reasoning here and hold that its interest in enforcing the Act's licensing scheme, whether alone or in combination with Gibson's interest in her license, is worth more than $250. The supreme court has never considered whether the State's interest in enforcing the law can satisfy the amount-in-controversy requirement or explained how to determine whether it satisfies the requirement in a particular case. Absent further guidance from the supreme court, we decline to apply the concurrences' theory here.

We conclude that the Department has failed to demonstrate that the amount in controversy satisfies the jurisdictional amount-in-controversy requirement. *See* Tex. Gov't Code § 22.220(a). We accordingly dismiss this appeal for want of jurisdiction. *See* Tex. R. App. P. 42.3(a).

_____

Edward Smith, Justice

Before Chief Justice Byrne, Justices Baker and Smith

Dismissed for Want of Jurisdiction

Filed:   December 2, 2021