## In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-12-00570-CV

_____

## IN RE COMMITMENT OF TIMOTHY RAY BRADSHAW

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 12-02-02067 CV**

## MEMORANDUM OPINION

After a jury found Timothy Ray Bradshaw to be a sexually violent predator, the trial court rendered an order of civil commitment establishing the terms that govern his civil commitment. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2012) (SVP statute). Bradshaw timely filed an appeal, raising ten issues that challenge the constitutionality of the SVP statute, the State's use of a prior conviction—later set aside—to establish Bradshaw's status as a repeat sexually violent offender, the legal and factual sufficiency of the evidence supporting the jury's verdict, and whether the trial court and the attorneys

1

representing the State made improper comments during voir dire that harmed Bradshaw by allegedly minimizing the jury's role in the trial of his case. We conclude that all of Bradshaw's issues are without merit, and we affirm the trial court's judgment.

## The Statute

Under the SVP statute, the State bears the burden of proving that the person it seeks to commit for treatment is a sexually violent predator beyond a reasonable doubt. *Id.* § 841.062 (West 2010). As defined by the Legislature, a sexually violent predator is a person who "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id* § 841.003(a) (West 2010). The term "'behavioral abnormality' means a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2) (West Supp. 2012). We have explained that "[a] condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious

2

difficulty in behavior control." *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied).

## Constitutional Challenge

In issue one, Bradshaw contends that the SVP statute is facially unconstitutional and violates his due process rights under the Fourteenth Amendment, as that statute was interpreted by the Texas Supreme Court in *In re Commitment of Bohannan*, 388 S.W.3d 296, 302-03 (Tex. 2012), *cert. denied* 133 S.Ct. 2746 (2013). We considered and rejected the same argument in another SVP commitment proceeding, *In re Commitment of Anderson*. 392 S.W.3d 878, 886 (Tex. App.—Beaumont 2013, pet. denied). In *Anderson*, we explained that "[w]e do not read the *Bohannan* opinion as eliminating a statutory requirement, or as altering the proof required under the statute to find that a person is a sexually violent predator." *Id.* For the same reasons that we explained in *Anderson*, we overrule issue one.

## Repeat Sexually Violent Offender

In issue two, Bradshaw contends the evidence is legally insufficient to support a finding that he is a repeat sexually violent offender because his 1986 conviction for sexual assault, one of the convictions used to establish his status as a repeat sexually violent predator, was set aside in 1990 after he successfully

completed probation. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 20 (West Supp. 2012).

Bradshaw's 1986 conviction is based on a sexual assault that Bradshaw committed on August 21, 1984. The evidence in the record shows that in 1986, Bradshaw was convicted of sexual assault and sentenced to eight years in prison, but the convicting court then placed him on probation. In 1990, the convicting court found that Bradshaw had satisfactorily fulfilled the conditions of his probation, terminated Bradshaw's probation, permitted him to withdraw his plea, dismissed the indictment, and the convicting court then set aside Bradshaw's 1986 conviction. *See id.*

Bradshaw argues that using his 1986 conviction to establish his status as a repeat sexually violent offender is barred by operation of the judicial clemency provision of Article 42.12 of the Texas Code of Criminal Procedure. When Bradshaw committed the sexual assault which resulted in his 1986 conviction, the Code of Criminal Procedure provided:

> In case the defendant has been convicted . . . and the court has discharged the defendant hereunder, such court may . . . permit the defendant to withdraw his plea, and shall dismiss the . . . indictment against such defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense[.]

4

Act of May 27, 1983, 68th Leg., R.S., ch. 303, § 12, sec. 7, 1983 Tex. Gen. Laws 1568, 1591-92 (current version at Tex. Code Crim. Proc. Ann. art. 42.12, § 20). According to Bradshaw, the State cannot use the 1986 sexual assault conviction to prove that he is a repeat sexually violent offender because he was released from all penalties and disabilities resulting from the offense. *See id.*

Whether Bradshaw's 1986 conviction can be used to establish that Bradshaw is subject to civil commitment proceedings as a repeat sexually violent predator is a matter of statutory construction. With respect to defining the prior convictions that can be used to establish a person's status as a sexually violent predator, the SVP statute provides:

> A person is a repeat sexually violent offender for the purposes of this chapter if the person is convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses or if:
> (1) the person:
> (A) is convicted of a sexually violent offense, regardless of whether the sentence for the offense was ever imposed or whether the sentence was probated and the person was subsequently discharged from community supervision;
> (B) enters a plea of guilty or nolo contendere for a sexually violent offense in return for a grant of deferred adjudication;
> (C) is adjudged not guilty by reason of insanity of a sexually violent offense; or
> (D) is adjudicated by a juvenile court as having engaged in delinquent conduct constituting a sexually violent offense and is committed to the Texas Youth

Commission under Section 54.04(d)(3) or (m), Family Code; and

(2) after the date on which under Subdivision (1) the person is convicted, receives a grant of deferred adjudication, is adjudged not guilty by reason of insanity, or is adjudicated by a juvenile court as having engaged in delinquent conduct, the person commits a sexually violent offense for which the person:

(A) is convicted, but only if the sentence for the offense is imposed; or

(B) is adjudged not guilty by reason of insanity.

Tex. Health & Safety Code Ann. § 841.003(b) (West 2010).

"When a statute is clear and unambiguous, courts need not resort to rules of construction or extrinsic aids to construe it, but should give the statute its common meaning." *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997). A person is a "repeat sexually violent offender" for purposes of the SVP statute if the person is convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses or if the person "is convicted of a sexually violent offense, regardless of . . . whether the sentence was probated and the person was subsequently discharged from community supervision[.]" Tex. Health & Safety Code Ann. § 841.003(b)(1)(A).

Bradshaw was convicted of sexual assault in 1986, his sentence was probated, and he was later discharged from probation. In 1993, Bradshaw was convicted and sentence was imposed because Bradshaw committed an aggravated sexual assault. *See id.* By virtue of his 1986 and 1993 convictions, it appears that

6

Bradshaw meets the definition of a repeat sexually violent offender under the SVP statute, but he argues the State cannot use the 1986 offense because he was released from all penalties and disabilities resulting from the offense when he received judicial clemency in 1990.

The Texas Supreme Court considered an argument similar to the one Bradshaw advances that addressed prior convictions under the 1996 version of the Concealed Handgun Act. *See Tune v. Tex. Dep't of Pub. Safety*, 23 S.W.3d 358, 363 (Tex. 2000). In *Tune*, the statute at issue defined "convicted" as follows:

> [A]n adjudication of guilt or an order of deferred adjudication entered against a person by a court of competent jurisdiction whether or not: (A) the imposition of the sentence is subsequently probated and the person is discharged from community supervision; or (B) the person is pardoned for the offense, unless the pardon is expressly granted for subsequent proof of innocence.

*Id.*; *see also* Tex. Gov't Code Ann. § 411.171(4) (West 2012).[1] Using that definition, the Texas Supreme Court read the Concealed Handgun Act, with respect to the term "convicted," to include a person whose conviction was set aside

---

[1]In 2009 the Legislature amended this definition of "convicted" to exclude an adjudication of guilt or an order of deferred adjudication that has been subsequently "vacated, set aside, annulled, invalidated, voided, or sealed under any state or federal law." *See* Act of June 1, 2009, 81st Leg., R.S., ch. 1146, §§ 6.06, 11.02, sec. 411.174(4), 2009 Tex. Gen. Laws 3583, 3624, 3635 (current version at Tex. Gov't Code Ann. § 411.171(4) (West 2012)). No similar change has occurred with respect to section 841.003(b) of the Texas Health and Safety Code.

pursuant to the judicial clemency provision of article 42.12, section 20 of the Code of Criminal Procedure. *Tune*, 23 S.W.3d at 363-64.

The SVP statute and the 1996 version of the Concealed Handgun Act use similar language to define a conviction in a way that includes persons who have received regular community supervision and are subsequently discharged. Under the SVP statute, a person "is convicted . . . regardless of whether the sentence for the offense was ever imposed or whether the sentence was probated and the person was subsequently discharged from community supervision[;]" under the version of the Concealed Handgun Act at issue in *Tune,* a person is convicted if "an adjudication of guilt . . . [is] entered . . . whether or not . . . the imposition of the sentence is subsequently probated and the person is discharged from community supervision[.]" *Compare* Tex. Health & Safety Code Ann. § 841.003(b)(1)(A), *with Tune,* 23 S.W.3d at 363. In *Tune*, the Supreme Court rejected Tune's argument that he could not be considered to have been "convicted" for purposes of the Concealed Handgun Act by operation of the judicial clemency provision in article 42.12, section 20. *Tune*, 23 S.W.3d at 364. By using a specific definition that included persons who successfully completed community supervision, the Supreme Court concluded that Tune could not obtain a concealed handgun license even though the general penalties and disabilities resulting from his prior

8

conviction were discharged when he was discharged from community supervision. *Id.*

Bradshaw argues we should decline to apply the higher court's reasoning in *Tune* to the SVP statute, and that we should instead apply the reasoning of the Texas Court of Criminal Appeals in a case that involved a felon's conviction for the unlawful possession of a firearm. *See Cuellar v. State*, 70 S.W.3d 815 (Tex. Crim. App. 2002). We disagree that *Cuellar* compels a result different from the result reached by applying the Court's reasoning in *Tune*.

In *Cuellar*, the Court of Criminal Appeals held that the defendant had been released from all penalties and disabilities resulting from his conviction and consequently was not a person who had been convicted for purposes of section 46.04 of the Texas Penal Code. *Id.* at 820. Under the criminal statute at issue in *Cuellar*, it was an offense for a person who had been convicted of a felony to possess a firearm, but the statute did not define "convicted" to have a meaning other than its ordinary meaning. *Id.* at 816, 820; *see generally* Tex. Penal Code Ann. § 46.04 (West 2011). The Court of Criminal Appeals noted that the Legislature had included two exceptions in article 42.12, and it stated that "[t]he Legislature could add other exceptions if it so chooses." *Id.* at 820.

In the section of the SVP statute addressing prior convictions, the SVP statute does not prohibit the use of convictions that are later discharged from serving as one of the predicate convictions needed to establish that a person is subject to civil commitment proceedings. *See* Tex. Health & Safety Code Ann. § 841.003(b)(1)(A). Section 841.003 of the Health and Safety Code contains an exception that allows a conviction discharged after the successful completion of probation to be used to establish a person's status as a repeat sexually violent predator. *Id.* Because the State could use Bradshaw's 1986 conviction as evidence to prove Bradshaw's status as a repeat sexually violent predator, we conclude that Bradshaw's argument that he did not have more than one prior conviction of a sexually violent offense, as required by the SVP statute, is without merit. We overrule issue two.

In issue three, Bradshaw contends that the use of his 1986 sexual assault conviction violates the ex post facto and retroactive law provisions of the Texas Constitution. *See* Tex. Const. art. I, § 16. Because the SVP statute is civil, and it is not punitive, the prohibition against ex post facto laws does not apply. *In re Commitment of Fisher*, 164 S.W.3d 637, 653 (Tex. 2005); *In re Commitment of Browning*, 113 S.W.3d 851, 858-59 (Tex. App.—Austin 2003, pet. denied); *Beasley v. Molett*, 95 S.W.3d 590, 608 (Tex. App.—Beaumont 2002, pet. denied).

The Texas Supreme Court has explained that "[t]he prohibition against retroactive application of laws does not apply to procedural, remedial, or jurisdictional statutes, because such statutes typically do not affect a vested right." *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia*, 324 S.W.3d 544, 548 (Tex. 2010). The SVP statute includes legislative findings (1) "that a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence[;]" (2) "the existing involuntary commitment provisions . . . are inadequate to address the risk of repeated predatory behavior that sexually violent predators pose to society[;]" (3) "treatment modalities for sexually violent predators are different from the traditional treatment modalities for persons appropriate for involuntary commitment[;]" and (4) "a civil commitment procedure for the long-term supervision and treatment of sexually violent predators is necessary and in the interest of the state." Tex. Health & Safety Code Ann. § 841.001 (West 2010). These findings indicate that the SVP statute was intended by the Legislature as a remedial statute.

Also, the application of the SVP statute to Bradshaw does not violate any restriction against retroactive laws. Regarding retroactive laws claims, generally, the Texas Supreme Court has stated:

> [T]he constitutional prohibition against retroactive laws does not insulate every vested right from impairment, nor does it give way to every reasonable exercise of the Legislature's police power; it protects settled expectations that rules are to govern the play and not simply the score, and prevents the abuses of legislative power that arise when individuals or groups are singled out for special reward or punishment. No bright-line test for unconstitutional retroactivity is possible. Rather, in determining whether a statute violates the prohibition against retroactive laws in article I, section 17 of the Texas Constitution, courts must consider three factors in light of the prohibition's dual objectives: the nature and strength of the public interest served by the statute as evidenced by the Legislature's factual findings; the nature of the prior right impaired by the statute; and the extent of the impairment. The perceived public advantage of a retroactive law is not simply to be balanced against its relatively small impact on private interests, or the prohibition would be deprived of most of its force. There must be a compelling public interest to overcome the heavy presumption against retroactive laws. To be sure, courts must be mindful that statutes are not to be set aside lightly.

*Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126, 145–46 (Tex. 2010) (footnotes omitted).

The public interest served by the SVP statute includes: "(1) the *parens patriae* power to provide care to its citizens who are unable because of emotional disorders to care for themselves; and (2) the police power to protect the community from the dangerous tendencies of some who lack volitional control over certain

12

types of dangerous behaviors." *In re Commitment of Rushing*, No. 09-11-00268-CV, 2012 WL 4466421, at *2 (Tex. App.—Beaumont Sept. 27, 2012, no pet.) (mem. op.). The right impaired is the right granted by article 42.12, section 20, to be free from a disability resulting from the commission of the offense—a right that would apply, but for the plain language of the SVP statute. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 20.

Bradshaw claims the SVP statute interferes with his expectation about a prior criminal judgment that was set aside, but his expectation is disturbed only if it is determined that he is presently experiencing such a serious difficulty in controlling his behavior that he is a menace to the health and safety of another. *Id.*; *see also* Tex. Health & Safety Code Ann. §§ 841.002(2), 841.003. We conclude there is a compelling public interest in committing for treatment persons like Bradshaw who a jury has determined is presently unable to control his sexually violent impulses. We conclude the SVP statute does not violate Texas's constitutional prohibition against retroactive laws, and we overrule issue three. *See* Tex. Const. art. I, § 16.

## Legal and Factual Sufficiency

Issues four through nine challenge the legal and factual sufficiency of the evidence supporting the jury's finding that Bradshaw is a sexually violent predator.

In issues four and five, Bradshaw argues the evidence is legally and factually insufficient because the State failed to link a mental condition to the evidence of Bradshaw's future dangerousness. In issues six and seven, Bradshaw contends there is no evidence or insufficient evidence that he has serious difficulty controlling his behavior. In issues eight and nine, Bradshaw contends the evidence is legally and factually insufficient to support a finding that Bradshaw is currently a menace to the health and safety of another person and that he is currently likely to engage in a predatory act of sexual violence. The specific legal challenge Bradshaw presents in issue eight contends the State failed to prove his future dangerousness beyond a reasonable doubt.

Under the SVP statute, the State must prove, beyond a reasonable doubt, that "the person is a sexually violent predator." Tex. Health & Safety Code Ann. § 841.062(a). As defined by the Legislature, a sexually violent predator is a person who "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id*. § 841.003(a).

With respect to issues four, six, and eight, Bradshaw failed to raise the complaints he has made on appeal when he made an oral motion for directed verdict or in his written motion for new trial. During the charge conference

Bradshaw asked the trial court to submit three separate questions asking whether Bradshaw is a repeat sexually violent offender, whether he suffers from a behavioral abnormality, and whether he is likely to engage in a predatory act of sexual violence, but he did not object to the issue submitted on the grounds that he asserts in his brief on appeal. *See* Tex. R. Civ. P. 274. In jury trials, Rule 274 of the Rules of Civil Procedure requires that a complaint regarding legal insufficiency be raised in the trial court to preserve the complaint for review on appeal. *Id.* The Texas Supreme Court has explained:

> No evidence points must be preserved through one of the following procedural steps in the trial court: (1) a motion for instructed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the issue to the jury; (4) a motion to disregard the jury's answer to a vital fact issue; or, (5) a motion for new trial.

*Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex. 1985). Bradshaw failed to preserve error regarding the complaints he presents in issues four, six, and eight; consequently, these issues are overruled. *See* Tex. R. App. P. 33.1.

Bradshaw's motion for new trial raised a factual sufficiency issue. "A point in a motion for new trial is a prerequisite to . . . [a] complaint of factual insufficiency of the evidence to support a jury finding[.]" Tex. R. Civ. P.

324(b)(2). Bradshaw's factual insufficiency arguments are preserved for our review.

In reviewing a challenge to the factual sufficiency of the evidence in SVP cases, we must weigh the evidence to determine whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that compels ordering a new trial. *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied). The risk of an injustice arising from the weight of the evidence is necessarily slight when the burden of proof is beyond a reasonable doubt and the evidence is legally sufficient. *Id*. Nonetheless, "if in the view of the appellate court after weighing the evidence, the risk of an injustice remains too great to allow the verdict to stand, the appellate court may grant the defendant a new trial." *Id*.

Bradshaw contends the opinions expressed by the State's psychiatrist, Dr. Sheri Gaines, were based upon nothing more than Bradshaw's having committed two sexual assaults. Dr. Gaines did testify that "the main reason I came to my opinion is the facts and data surrounding his sexual offenses[,]" which included a rape committed at knifepoint, but she explained that these two offenses were not the only evidence she considered.

Dr. Gaines described the methodology she used to form her opinions. Among other things, she reviewed Bradshaw's records and a report on Bradshaw compiled by the Multidisciplinary Team, she interviewed Bradshaw, and she reviewed the depositions taken in his case. According to Dr. Gaines, she followed a methodology that is consistent with the accepted standards in the field of psychiatry and her opinions are based on reliable scientific data.

Dr. Gaines diagnosed Bradshaw with paraphilia not otherwise specified—nonconsent type, paranoid schizophrenia, alcohol dependence in remission in a controlled environment, marijuana dependence in remission in a controlled environment, antisocial personality disorder, and mild mental retardation. She explained that her diagnoses were based on criteria in the Diagnostic and Statistical Manual. According to Dr. Gaines, a diagnosis of paraphilia concerns an expression of sexual deviance through obtaining arousal and having sex with nonconsenting partners through threats of violence. Dr. Gaines stated that she was comfortable with her diagnosis of paraphilia because Bradshaw exhibited the essential features of the diagnosis, including recurrent, intense sexually arousing fantasies, sexual urges, or behaviors generally involving the suffering or humiliation of one's partner, and involving non-consenting persons. Dr. Gaines noted that both her evaluation of the records and her interview with Bradshaw indicated a long history

of suffering from psychosis, including having chronic delusions and auditory and tactile hallucinations. When she interviewed him, Bradshaw was not getting mental health treatment, and he was actively psychotic during their interview. According to Dr. Gaines, she considered Bradshaw's psychosis in concluding that he had a behavioral abnormality because the records reflected he had offended while symptomatic from his condition of paranoid schizophrenia. Bradshaw, during his interview with Dr. Gaines, acknowledged having, from childhood and adolescence, several of the criteria that Dr. Gaines explained were applied to a diagnosis for conduct disorder, including truancy, enuresis, fighting with weapons, and disrespect for authority. Dr. Gaines explained how her diagnosis of Bradshaw's psychiatric disorders influenced her professional opinion that Bradshaw suffers from a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence.

According to Dr. Gaines, Bradshaw's antisocial personality disorder coupled with a paraphilia, sexual deviancy and schizophrenia are together indicative that he has a problem controlling his emotional or volitional capacity. Although Dr. Gaines noted that Bradshaw's prison record did not show that he had committed sexual offenses while in prison, Bradshaw's sixty-five disciplinary cases while incarcerated included fighting, fighting with a weapon, assaulting security, and

18

assaulting other inmates. Dr. Gaines explained that Bradshaw's extensive disciplinary record showed persistent, repetitive behavior where he continued to break the rules even in a controlled environment. Dr. Gaines further noted that Bradshaw had committed non-sexual criminal offenses when he was not imprisoned.

Dr. Gaines also explained what she felt were Bradshaw's risk factors for recidivism, and these included his deviant sexuality, mental illness, low intellectual functioning, substance abuse, lack of a support system, and his previous use of a weapon when he committed a sexual offense. An actuarial test that Bradshaw took and that Dr. Gaines relied on in forming her opinions placed him in the low-moderate category of risk, but, according to Dr. Gaines, the psychologist who administered the test also expressed a clinical judgment that Bradshaw has a behavioral abnormality. Dr. Gaines testified that it was significant to her opinions that Bradshaw had not had sex offender treatment.

The jury is entitled to draw reasonable inferences from basic facts to determine ultimate facts, and to resolve conflicts and contradictions in the evidence by believing all, part, or none of a witness's testimony. *In re Commitment of Barbee*, 192 S.W.3d 835, 842 (Tex. App.—Beaumont 2006, no pet.). The record does not reflect a risk of injustice that compels granting a new trial. *See Day*, 342

S.W.3d at 213. We hold the evidence is factually sufficient to support the jury's verdict. We overrule issues five, seven, and nine.

## Voir Dire

Issue ten complains of statements made by the trial court and the State's attorney during jury selection that Bradshaw argues minimized the jury's role in resolving his case. Bradshaw did not object to the comments when they were made during voir dire, and he did not raise a complaint about these same comments in his motion for new trial. Bradshaw failed to preserve the complaint he raises in issue ten for appeal. *See* Tex. R. App. P. 33.1. We overrule issue ten, and we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on September 19, 2013
Opinion Delivered October 31, 2013
Before Gaultney, Kreger, and Horton, JJ.